FIRST NAT. BANK *v.* OWEN.

(Division B. Dec. 7, 1936.)

[171 So. 4. No. 32445.]

**Shannon & Schauber,** of Laurel, for apellant.

342

D. B. Cooley, of Laurel, for appellee.

**Griffith, J.,** delivered the opinion of the court.

On or about February 24, 1933, Mrs. Elizabeth T. Peck, a widow, without children, went to the home of appellee, also a widow, to live therein as a member of appellee's household, and did so live there until her death. Mrs. Peck was about seventy-five years of age and was afflicted with rheumatism and diabetes, as was proved by several nonprofessional witnesses without objection. These afflictions, together with her advanced age, rendered her practically helpless much of the time, and at all times day and night her condition required watchfulness and the presence of some competent person within call. Ap-

pellee gave her board, prepared her meals, did her laundry, and administered her medicines, which included on the average two hypodermic injections of insulin per day. Some of the witnesses speak of the service rendered as being that which a daughter would render to her aged mother, and all the evidence justifies that characterization.

The proof shows that appellee and Mrs. Peck were not related by blood, and only distantly by marriage, and that when Mrs. Peck went to appellee's home to live the agreement was that, as compensation for her support and care, Mrs. Peck would make a will leaving, at her death, all her estate to appellee; and this proof was so strongly made as to meet the rule, established in this state, that the evidence in support of claims for such services to a decedent must be clear and reasonably positive and must be closely scrutinized. Tarver v. Lindsey, 161 Miss. 379, 383, 137 So. 93. The record does not disclose what estate Mrs. Peck had when she went to appellee's home, except that she had on deposit in bank nearly three thousand dollars. Nor does the record fully disclose the financial condition of appellee, although it is fairly inferable from what is shown that appellee had only her home and was maintained therein by her son, who lived there with her.

Mrs. Peck survived until March 9, 1936. For some reason, not explained, she did not make a will; but the evidence does disclose that in the morning before her death, which occurred thereafter, about dark, she requested a neighbor then present to go to the bank and to get the man at the bank so that "I can make Rosa my will"—Rosa being appellee's name. This request seems not to have been granted, nor was the reason for the failure explained. The appellant bank was appointed administrator of Mrs. Peck's estate, and, within the time and in the manner required by law, appellee probated her claim against the estate for one thousand and

ninety-three dollars "for board and room rent, laundry work done and for nursing," being at the rate of one dollar per day for one thousand and ninety-three days. At the request of some nieces and nephews, the heirs at law of Mrs. Peck, the administrator contested the claim, on the alleged ground that the contract or agreement between Mrs. Peck and appellee was that the services and support mentioned would be rendered and furnished for ten dollars per month, and that same had, from time to time, been paid as rendered. Upon the hearing the chancellor sustained the probated claim and disallowed the contest of the administrator.

In addition to the proof of an original express oral agreement that appellee was to be compensated by a will, appellee proved also that Mrs. Peck, on subsequent occasions, made statements in affirmance of that understanding. In order to meet the case thus made, the contestant offered several witnesses who testified, or proposed to testify, that Mrs. Peck had stated to them, but not in the presence of appellee, that she (Mrs. Peck) was paying and had paid appellee ten dollars per month for her board and laundry. The chancellor excluded this testimony, so offered by the contestant, and this action is the basis of the principal assignment of error.

We are of the opinion that the assignment is not well taken. Here the parties were not related by blood and only remotely by marriage; there are no circumstances in evidence which cast any moral obligation upon appellee to render the services; the decedent rendered no services in return, but instead had to be waited on much like an invalid; the decedent was well able to pay for the care and support furnished. These facts are amply sufficient to raise an obligation on the part of the decedent to pay therefor at what the care and support was reasonably and justly worth, unless there were express proof that they were not to be paid for, or were to be compensated at some other rate. The services rendered

in this case, according to all the proof, were of such character that any person of the slightest knowledge and appreciation thereof would know that any such sum as ten dollars per month therefor would be grossly inadequate; whence it follows that the declarations sought to be introduced by the contestant would be of a self-serving nature, which, under elemental rules, are not receivable in evidence. Moreover, and in justice to Mrs. Peck, it is to be noted that her statements about the ten dollars per month did not say that that sum was to be all that was to be paid or was paid in the absolute discharge of all compensation for all the services rendered and to be rendered; and any inferences to be drawn from the said statements that the ten dollars was to be in full may well be considered as overcome or displaced by way of reconciliation by and with her other statements and her express contract that the ultimate compensation for the whole of the services rendered would be the making of the will.

It is assigned as error that there is no specific testimony as to the value of the services, measured in terms of dollars and cents, except by one witness, a next-door neighbor, and appellant contends that this witness was not shown to be qualified to pass on the value of such services. Several witnesses, nearly all of them neighbors, testified in regard to the character of the services showing the facts thereof fully and from their own personal knowledge, including this particular witness. Facts in respect to services of this kind and knowledge of the value thereof are such as come within the general experience and observation of all sensible persons, and it requires no skilled or expert witness to give evidence in regard thereto. 22 C. J., pp. 518, 519.

It is assigned also that the court erred in admitting the testimony of the physician who attended Mrs. Peck throughout the time she lived at appellee's home. Some of the physician's testimony was competent and admis-

sible; other parts of it were not. But conceding that all his testimony was inadmissible, the decree cannot be reversed, because there is abundant testimony to sustain the decree without the physician's testimony. The rule is that although improper evidence has been admitted, if, nevertheless, there is enough competent evidence to sustain the decree, there will no reversal. Union & Planters' Bank & Trust Co. v. Rylee, 130 Miss. 892, 907, 94 So. 796. See other cases cited note 10, Griffith Chan. Prac., p. 785.

In Ellis v. Berry, 145 Miss. 652, 110 So. 211, it was held by this court that when parties, in a situation similar to that presented in this case, make an oral agreement that one is to care for and support the other and that the latter will make compensation therefor by way of a will to the former, which will is never made, the party who has rendered the care and provided the support under such an agreement may recover therefor on the quantum meruit. Such is the proceeding in this case, and since the proof is sufficient and no reversible error is shown, the decree must be affirmed.

Affirmed.