HICKMAN *v.* SLOUGH.

(Division B. Feb. 5, 1940. Suggestion of Error Overruled March 4, 1940.)

[193 So. 443. No. 34024.]

**J. W. Price** and **J. W. T. Falkner,** both of Oxford, for appellant.

C. A. Bratton, Bramlett Roberts, James Stone & Sons, and R. L. Smallwood, Jr., all of Oxford, for appellee.

Argued orally by **J. W. T. Falkner**, for appellant, and by **Phil Stone**, for appellee.

**McGehee, J.**, delivered the opinion of the court.

There is here involved a contest of the probated claim of appellant against the estate of J. F. Sullivan, deceased, for services rendered him by appellant in the capacity of a faithful negro servant and personal attendant, during the five years immediately preceding the death of the decedent, which occurred on December 23, 1937. The claim was disallowed by the Chancellor on the ground, as stated in his finding of fact, that the evidence offered in support thereof was insufficient to prove a contract or promise to pay for the services, and that it failed to show that the deceased had taken any action in regard thereto which could bind his estate.

The testimony disclosed that at the beginning of the year 1933 Mr. Sullivan had attained the age of 82 years, and was a widower who lived alone about one mile from the city of Oxford, in Lafayette county; that at times he was sick and unable to care for himself; that he was almost deaf, and could be talked to only by means of a tube trumpet; that he had no near relatives, except some nephews and nieces, who did not live near enough to his home to look after his daily needs; that his adopted son was employed by certain road construction companies in various counties from time to time, and consequently was unable to be at home, except for very brief visits; and that therefore it became necessary that this lonely old man should have some one with him, as an attendant and servant, to bring in his wood and water; to drive a car, and help him in and out of the same when he went to town or visited his small farms, as he continued to do until shortly before his death at the age of 87 years; also to work his garden when necessary; and to minister unto him in time of sickness, or when weak from the in-

firmities of age—lifting, bathing and dressing him when necessary.

In that situation, he turned to the appellant, Walter Hickman, whose loyalty and faithfulness proved sufficient to meet this demand. It is shown that this old negro consented to sell his live stock, wagon, etc., which he had been using on his own ten-acre farm, and to forego making further crops, in order that he might thereafter give his time to the constant care of his friend and neighbor in the time of his great need.

The wife of the appellant testified that there was then had an oral agreement whereby her husband was to be well paid for his services after the death of Mr. Sullivan; that they lived in sight of his house, and that her husband thereafter devoted his time during the next five years to responding to the needs of Mr. Sullivan, hereinbefore mentioned. In this she was corroborated by several of the neighbors, both as to the extent of the services rendered, and as to the declared intention and purpose of the deceased, subsequent to the original agreement, to see that the services were paid for after his death. The adopted son undertook to minimize the amount of work done by the appellant, but he was contradicted in that regard by all of the disinterested witnesses, including two introduced by the contestant. Moreover, he was not there much of the time, as heretofore stated. There was no moral or legal obligation resting upon the appellant to render the services without compensation, and in our opinion the testimony shows beyond question that it was not the intention of the parties that such services were to be rendered gratuitously. The statement frequently made, to the effect that ''I am going to see that Walter Hickman is well paid after my death,'' would ordinarily mean that he intended to provide for such payment in a will, although in this case two of the witnesses stated that they heard the deceased tell the appellant, in substance, that he wanted him to put in his claim, and insist upon his rights.

In the case of Ellis v. Berry, 145 Miss. 652, 110 So. 211, 213, it was held that where the deceased had boarded in the home of certain relatives, and instead of paying cash for such board, had stated that he wished the payment to be postponed until after his death, there was an obligation on the part of the estate to pay the claim, thereby giving effect to the promise of the deceased to provide by will the compensation due. The court quoted with approval from the case of Martin v. Wright's Adm'rs, 13 Wend. (N. Y.) 460, 28 Am. Dec. 468: "Services under Expectation of Legacy.—When one performs services, for another under a mutual understanding that the latter will make compensation therefor by a legacy in his will, such services are not gratuitous and if the recipient of them does not give the expected legacy, an action lies against his representative for their value." See, also, Tarver v. Lindsey, 161 Miss. 379, 137 So. 93; First Nat. Bank v. Owen, 177 Miss. 339, 171 So. 4; Haralson v. Brown, 178 Miss. 57, 172 So. 336.

When there is a promise, either express or implied, to pay for services rendered, and the amount of the compensation is not agreed upon, the law will imply an obligation to pay on a quantum meruit. First Nat. Bank v. Owen, supra, and other authorities above cited.

Moreover, where it is definitely shown, from the substance of the statements frequently made, that it was the purpose of the decedent, who was more than 82 years of age when the agreement was made as aforesaid, to hold on to his cash balance, pending any emergency that should arise, and then see to it that the appellant was paid out of the estate, whether he should die shortly, or continue to live far beyond his allotted time, there is no presumption that the services were paid for in advance of his death. Appellant's wife testified that nothing was ever paid her husband in that behalf, and none of the other witnesses were able to say that he was ever paid anything in their presence, or to their knowledge, during the entire time covered by the probated

claim, notwithstanding the fact that one, Mollie Tacket, a colored woman, carried meals to the home of the deceased three times per day during all of that time, and others were frequently in his home.

Appellant owned a 1928 Chevrolet car, in which he carried Mr. Sullivan to town and to his little farms, and the adopted son testified that appellant would be allowed 25 cents for trip to town and 50 cents for one to either of the farms; that he himself would enter credits for these amounts, at the request of the parties on appellant's small notes for cash loans. Whether these notes and credits covered transactions for advances and payments for gas and oil is not shown. The credits may have covered, also, full compensation for the trips, under some separate agreement, since the entries read "for hauling up to date." Although the amounts paid are not clearly shown to have been more than sufficient to take care of the actual expense of operating this old car, we are unable to say that the Chancellor was manifestly wrong in disallowing the claim to the extent of the amount asked for the "hauling."

As to the claim for services rendered in waiting on the deceased at the home, and the other work done there, the adopted son does not claim ever to have entered a credit, or to have known of any payment being made therefor; notwithstanding that during a portion of the last year of the life of the deceased the witness was transacting the business under a power of attorney. It is true that this witness says he heard the deceased tell the appellant that he was going to leave him $25 as a gift, and would pay him for his services along, as rendered; but this is contrary to the overwhelming weight of the testimony of the disinterested witnesses regarding the issue as to whether the services were to be paid for until after the death of the deceased.

It was further shown that the wife of the appellant earned from $5 to $6 per week; that they owned their home, a cow, chickens, etc.; and it is therefore not un-

reasonable that they were able to get along under the agreement testified to. Naturally, it would not have been expected in the normal course of nature that a man 82 years of age would live a great while.

That the appellant was faithful and constant in his attention cannot be seriously questioned. The circuit clerk testified that Mr. Sullivan made his office headquarters when he came to town; that the appellant would bring him to town in the car, and "set" him down there until he was ready to go home. Neighbors told of visiting in his home at night frequently when he was sick, and of seeing the appellant there waiting on him when they arrived, and that they left him there when they went home. He remained faithful to the end.

Only two witnesses testified as to the value of the services, aside from the "hauling", and one of them stated the reasonable value of such service to be $25 per month; while the other, a disinterested neighbor, suggested $200 per year.

We are of the opinion that the decree of the court below should be reversed, and that there should be a decree here for the sum of $200 per year for the period from 1933 to 1937, inclusive, payable out of the assets of the estate, on the same basis as for other unsecured probated claims.

Reversed, and decree here for appellant.