WELLS *et al. v.* BROOKS.

(In Banc. Jan. 28, 1946. Suggestion of Error Overruled Feb. 25, 1946.)

[24 So. (2d) 533. No. 35886.]

328

Lester G. Fant, of Holly Springs, for appellants.

Herbert Holmes, of Senatobia, and Dean Belk, of Holly Springs, for appellee.

Argued orally by **Lester G. Fant,** for appellant, and by **Herbert Holmes,** for appellee.

**Roberds, J.,** delivered the opinion of the court.

Miss Ella V. Fowler departed this life intestate in Marshall County, Mississippi, August 31, 1943. She owned at that time her home in Holly Springs, Mississippi, occupied alone by her as her residence, and 160 acres of land located in Marshall and Tate Counties, $3,086 cash in bank, a small amount of uncollected rents, and household and kitchen furniture valued at $112. She had never married and had only collateral heirs, who were numerous and located in different places. Claude Brooks, one of her heirs, qualified as administrator of her estate in Marshall County. He, with certain of the other heirs, filed a petition for sale of the assets of the estate and division of the proceeds. Mrs. Mamie Wells, one of appellants, by answer, contested this petition, and, by cross-bill, laid claim to all of the property owned by Miss Fowler at the time of her death, thereby denying that the petitioners and all the respondents thereto, except herself, owned any interest in said property. Her claim

thereto, as asserted in her cross-bill, was grounded upon an alleged oral agreement of Miss Fowler, made in 1939, ". . . that if they (Mrs. Wells and her husband Herman Wells) would continue to look after her farm, manage her affairs for her, look after her in sickness and in health, as they had been doing for years, and did so up until the time of her death, as though the said Miss Ella Fowler was respondent's mother, that she, Miss Fowler, would make a will and leave to them her entire estate of every kind and description." The answer to the cross-bill denied that such promise or agreement was made and denied performance by appellants in compliance therewith, if made, and set up the further defense that such an oral promise is not enforceable under our statute of frauds prohibiting contracts for the sale of lands unless ". . . the promise or agreement upon which action may be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some person by him or her thereunto lawfully authorized in writing." Section 264, Code 1942. The proof of this oral arrangement, as given by appellant Herman Wells, husband of Mrs. Mamie Wells, was in these words, "The only contract that I heard her make that would be anything like a contract was the fact that when her father died she made the statement to her that she wanted me to continue looking after her property and her things as Mr. Kerr had, that some day everything would be her's." "Q. Never said how it was going to be her's or whether she was going to deed it to her, or give it to her by will or how? A. No, sir, she said it would be her's." Later in his testimony he reiterated there was no agreement other than that just stated. Another witness for Mrs. Wells testified that when the witness and Miss Fowler and the Wells returned to the home of Miss Fowler after the burial of Mr. Kerr, the father of Mrs. Wells, and who theretofore, it is claimed, had been looking after the affairs of Miss Fowler, that Miss Fowler told Herman Wells she wanted

him to continue looking after her affairs "and she wanted Mamie to get what she had." Mrs. Wells herself testified that Miss Fowler said that ". . . if he (Herman Wells) would continue to carry on like Lee (the father of Mrs. Wells) had done and look after her property, it would be our's some day." The proof, therefore, did not exactly correspond with the allegations of the cross-bill as to this oral agreement. However, the Chancellor held that this parol promise was unenforceable under the foregoing statute whether the transfer of the property was to be by will, deed or otherwise, and regardless whether Herman Wells performed his part of the arrangement. In this the Chancellor was correct. Stephens v. Duckworth, 188 Miss. 626, 196 So. 219; Palmer v. Spencer, 161 Miss. 561, 137 So. 491; Singletary v. Ginn. 153 Miss. 700, 121 So. 820; Ellis v. Berry, 145 Miss. 652, 110 So. 211; 49 Am. Jur., p. 539, par. 215; Walton v. Lowery, 74 Miss. 484, 21 So. 243; Metcalf v. Brandon, 58 Miss. 841, involving a trust; Harrell v. Miller, 35 Miss. 700, 72 Am. Dec. 154. The case of Price v. Craig, 164 Miss. 42, 143 So. 694, is not to the contrary. The agreement there to make a will was in writing. Nor does Anding v. Davis, 38 Miss. 574, 77 Am. Dec. 658, hold otherwise. That case arose before enactment of Section 269, Code 1942, requiring declarations of trust to be in writing and duly recorded to be valid; the promisor there actually executed the will pursuant to the oral agreement and kept it for a considerable time; he furthermore did actually set up a trust for some of the beneficiaries as he had agreed, and one of the main questions in the case was whether a deed to Anding from Davis could be shown to be not an absolute deed but security for the payment of a debt owing by Davis to Anding, and, too, in that case, Anding actually had possession of and was operating the property in dispute, using the income therefrom to liquidate the debt owing him by Davis. In the case at bar it is not claimed that Miss Fowler ever executed a will pursuant to this oral promise, nor was Mrs. Wells ever placed in

possession of the property. Those situations are not be-fore us. It will be noted, too, that in Mississippi part performance does not take the case from under Section 264. Howie v. Swaggard, 142 Miss. 409, 107 So. 556; Milam v. Paxton, 160 Miss. 562, 134 So. 171. Also, where the agreement includes both realty and personalty, the transaction is not separable (49 Am. Jur., p. 541, par. 216), and, in addition, see Section 268, Code 1942, requiring a sale of personal property for the price of $50, or more, to be in writing, unless the buyer shall receive part of the property so purchased, or pay or secure the puchase money, or part thereof, or that some note or memorandum of such bargain be in writing signed by the party to be charged by the contract, or his agent thereunto lawfully authorized. The Chancellor was correct in his holding that Mrs. Wells was not entitled to the estate of Miss Fowler under the circumstances here.

Mrs. Mamie Wells undertook to probate a claim against the estate for services for six-teen years prior to the death of Miss Fowler in "nursing her in sickness and looking after her comfort and welfare when she was well ......at $100 a year .................... $1,600.00."
And another claim as the sole heir at law of her father A. L. Kerr "for his services ren-dered her, Miss Ella V. Fowler, for 35 years, beginning 1904 and ending 1939 to date of his death at $100.00 per year ................ 3,500.00

"Total Claim ........................ $5,100.00."
Mr. Kerr was a nephew of Miss Fowler by the half blood and one of her nearest of kin and Mrs. Wells was his daughter. The Chancellor correctly disallowed these claims. This record discloses no promise, or agreement, or circumstances from which it can be reasonably in-ferred that Miss Fowler expected to pay for any services rendered by Mr. Kerr and Mrs. Wells, nor from which they could reasonably expect pecuniary pay. In fact, the

conduct of the parties and all the circumstances nega-
tive any such promise or expectation  They were of her
next of kin and the proof shows that whatever they did
was prompted by their affection for her.

Mr. Herman Wells presented a claim
against the estate for "managing farm with
the assistance of A. L. Kerr from 1926 to
1939, 13 years ..........................  $1,300.00
"Services—managing farm exclusively for
4 years, from 1939 to 1943, at $250.00 a year ..  $1,000.00

"Total Claim ........................  $2,300.00."

The Chancellor disallowed this entire claim.  His ac-
tion was correct as to the first item therein, because the
claimant failed to show circumstances justifying any
assent, express or implied, on the part of Miss Fowler to
pay him, and he failed to show he rendered to her any
service of substantial benefit from 1926 to 1939.  How-
ever, the later item in the claim presents a different
situation.  Before he performed the services hereinafter
set out Miss Fowler had made the above-quoted state-
ments to him and Mrs Wells, differently worded, as tes-
tified by the three witnesses, but meaning in substance
that if the mentioned services were rendered by Mr. Wells
she, Miss Fowler, would leave her property to Mrs Wells,
or to both of them.  There is no dispute that Miss Fowler
made these statements, and there is little doubt that Wells
performed the services in the expectation they would
be carried out, and that he had reasonable grounds for
so expecting—in other words, he rendered services to
her at her request under conditions justifying expecta-
tion of pay therefor, which services he was under no
duty, legal or moral, to render otherwise.  It is shown
that in October, 1940, he did lease to a Mr. Freeman and
a Mr. Callis, former tenants of Miss Fowler's, for a period
of five years, 320 acres of land in which Miss Fowler had
a life estate, together with the 160 acres mentioned above,
which she owned in fee simple, for an annual rental of

five thousand pounds of lint cotton, the contract in the body thereof describing Wells as the agent of Miss Fowler and which was signed in her name as owner by him as agent, the rent cotton to be delivered to Wells at his home at Senatobia, Mississippi. Miss Fowler approved this transaction. He collected the rent cotton each year and sold it and accounted to Miss Fowler for the proceeds thereof, except $12.50 retained to pay for work on the family cemetery and $50 for some other expenses. It is also shown that on at least two occasions he went to the leased premises at the request of Mr. Callis to look after repairs and improvements on the lands, the lessees being obligated to make necessary repairs, and to help straighten out some question about the lines of the land. Mr. Wells testified he went to the rented premises many more times than that. In short, he rented out these lands, collected the rent, sold the cotton, accounted for the rent, paid the taxes, and looked after the lands in general They were located several miles from Senatobia, the home of Wells, and some 30 to 35 miles from Holly Springs, the home of Miss Fowler. Wells and his wife also said they made almost weekly trips from Senatobia to Holly Springs, an approximate distance of 35 miles, to see Miss Fowler and look after her personally, taking to her groceries and other useful articles, and that they rendered her other services, but no compensation can be allowed under the claim as filed except for services in "managing" the farm. It is true that in claims of this type the burden is on the claimant to establish by clear and convincing evidence the services were rendered pursuant to an understanding, express or implied. Bell v. Oates, 97 Miss. 790, 53 So. 491. The pay expected by Wells—that is, transfer in some manner to his wife or to his wife and himself by Miss Fowler of the title to her property—cannot be enforced, but that does not mean he is not entitled to and cannot recover the reasonable value of his services rendered in the rightful expectation of such transfer. This Court has held a number of times that in such cases the claimant is entitled to fair and ade-

.quate compensation on a quantum meruit basis. Ellis v. Berry, and Stephens v. Duckworth, supra.

The cause must be remanded in any event for sale of the property. The matter of the value of the services of Wells for managing the farm after the death of Mr Kerr is left open to be fixed by the Chancellor. In all other respects the decree of the Chancellor is affirmed.

Affirmed in part, reversed in part and remanded.

**L, A. Smith, Sr., J.,** took no part in this decision.

PARTIALLY DISSENTING OPINION.

**Sydney Smith, C. J.,** delivered a partially dissenting opinion.

Both of the decrees rendered by the court below should be affirmed. As to the decree refusing to hold that Mrs. Wells was entitled to the property here involved for the reason that Miss Fowler had agreed for a consideration to devise it to her, the court below held, and the evidence clearly discloses, that Miss Fowler made no such agreement, either written or verbal; consequently, the discussion here of the effect of a verbal agreement to devise property is unnecessary, as is also the comment on the case of Anding v. Davis, 38 Miss. 574, 77 Am Dec. 658, and, therefore, I do not join therein.

An implied contract by Miss Fowler to pay Herman Wells for the services he claims to have rendered her must rest, if at all, on the excerpt from the evidence of the wife, Mrs. Wells, set forth in the controlling opinion. A near neighbor and friend of Miss Fowler testified, without objection, that he heard her say that Wells "was doing it (rendering the services he did for her) through free gratis." And on the whole evidence, which was voluminous, the Chancellor was justified in believing that Miss Fowler did not make the statement attributed to her by Mrs. Wells; and it cannot be said that he was manifestly wrong in disregarding it.

**Alexander, J.,** concurs in the foregoing dissent.