RODGERS, Justice.
"This case grew out of a claim filed by appellant, Mrs. Hettie Stringer Bryant, in the estate proceedings of her father, J. F. Stringer, deceased. Appellant contends that she took care of her father, and that because of an implied contract between them for her services, she is entitled to be paid out of the assets of the estate on a quantum meruit basis.
The record reveals the following facts. Mr. and Mrs. J. F. Stringer were hardworking, frugal, farmers, living in Smith County, Mississippi, where they owned a farm and had accumulated considerable money. They had three children: Ulysee Stringer, Mrs. Hettie Bryant, and Mrs. Harvey Yelverton. On June 3, 1955, Mrs. J. F. Stringer died, and although the three children lived within a mile, and a mile and a half, of their father, he continued to live in his home. The appellant, Mrs. Bryant, lived nearer to her father than did the other two children. Beginning on the day of the death of her mother, Mrs. Bryant began to take care of her father. She prepared his meals, and although he usually came to her home to eat, she often took his meals to him. She did his laundry and kept his home. She assumed the entire responsibility of taking care of her father. The testimony shows that appellant was very fond of her father, and that he was fond of her and depended on her. He often remarked that she had been good to him. He told his daughter, Mrs. Yelverton, his son-in-law Byron Bryant, his grandson Jerry Bryant, his cousin Wallace Blakeney, his brother Falone Stringer, his niece Mrs. Rose Faircloth, and others, that he intended to do more for his daughter, Hettie Bryant, than was set out in the will. All of these witnesses said directly or indicated that J. F. Stringer said that he was going to pay his daughter, the claimant, for her kindness. On one occasion, he told his daughter, Mrs. Yelver-ton, that he had sent a cow to the home of Mrs. Hettie Bryant and he did not intend to take it back, and he also said: “I owe her for taking care of me and she needs the cow.” He then told her that: “I have got my will fixed and you all three, you are included in it. * * * Now Hettie * * * (there is something that has) got to come above that will, for her taking care of me. She’s been mighty good to me. I have got to pay her above this will I have got made.”
The evidence also shows that a short time after the death of Mrs. Stringer, Mr. Stringer, in the presence of the appellant, Mrs. Bryant, said that he was going to pay her for taking care of him.
On the other hand, the record reveals that the other two children were also good to their father. Ulysee Stringer paid the bills due by J. F. Stringer at the hospital and attended to his other financial affairs. He made the funeral arrangements and paid the funeral expenses. He paid bills due the electric company for current used in his father’s home. He also did other acts of kindness for and on behalf of his father.
On June 23, 1955, a short time after the death of his wife, J. F. Stringer had a friend, Tom Mayfield, to write his will. This will did not mention any obligation to the claimant. Thereafter, on January 22, 1962, one and one-half years before his death, J. F. Stringer went to the tax assessor of Smith County, Mississippi, and obtained assistance in platting his land so that he might devise his land between his devisees. He then went to a lawyer and had his last will drawn, in accordance with his instructions. This will (the will filed for probate) does not show that the testator recognized any indebtedness due the claimant, Mrs. Bryant, although it was written long after the time shown by the testimony that the testator had repeatedly said he wanted to pay his daughter for her services in taking care of him. The testimony also shows that the decedent had, prior to making his last will, established a joint account in the Smith County Bank, payable to him *897 self or one of his named children, and that the claimant received $2,411.28 after the death of her father from the joint account.
After having heard and considered the evidence, the chancellor rendered an opinion in which the court found that the deceased stated to others during the latter part of his lifetime, on different occasions, that he was going to see that Mrs. Hettie Stringer Bryant would be paid extra for taking care of him, but the court found that these statements were not made immediately after the death of his wife, and were not made to claimant, Mrs. Bryant, hut that these statements, or desires, were made the latter part of his life to third persons. The chancellor also found that he was unable to determine whether or not Mrs. Bryant had been paid extra for these services, in view of the fact that she had received a savings certificate on the Smith County Bank in the sum of $2,411.28, and also the sum of $984.62 as her part of the cash left in the account of her father at the time of his death. The court held, as a matter of fact, that Mrs. Bryant did not help or assist her father immediately upon the death of her mother, or at any other time, as the result of an offer, promise or desire, that the said J. F. Stringer had made to her, or any third person, but it was the natural outgrowth of her love and affection for him. The claim filed by appellant for services to her father was therefore denied by the chancellor.
I
The real question at issue on appeal in this case is whether or not the evidence in the trial court is sufficient to establish that there was an implied contract between claimant and her father, showing that if she would take care of him, she would receive payment for services rendered.
The appellant has cited several cases wherein the opinions of this Court show that the parties had a definite understanding that one of them would render services for the other and would receive pay for the work. Compensation was allowed by this Court on a quantum meruit basis, because the amount due for the services was not specified in the contract, or that one of the parties made an unenforceable promise to will property to the other party. See: Collins’ Estate v. Dunn, 233 Miss. 636, 103 So.2d 425 (1958); In re Whittington’s Estate, 217 Miss. 457, 64 So.2d 580 (1953); Stephens v. Duckworth, 188 Miss. 626, 196 So. 219 (1940); Hickman v. Slough, 187 Miss. 525, 193 So. 443 (1940).
Some of the foregoing cases referred to the case of Bell v. Oates, 97 Miss. 790, 53 So. 491 (1910). This is a case where one O. W. Oates probated his claim against the estate of the decedent, Miss Moore, for the sum of $300 for services in attending upon, nursing, and caring for her during her last illness, for a period of three years. The Court below allowed the claim in the amount of $100, from which decree the administrator appealed. The testimony in that case shows that Miss Moore, and her cousin, Miss Ellison, who were somewhat advanced in years, lived together, and that five or six years before the death of Miss Moore, the claimant Oates lived with them, under a contract in which they gave him lodging and board and certain land to work, as consideration for his looking after their affairs about the place, providing fuel for fires, and calling doctors when necessary. About twelve or fifteen months before the death of Miss Moore, she fell and broke her hip, and the claimant waited on her and did what was necessary for her comfort. And this Court held that these loose declarations of the decedent to a third person, expressing a willingness to pay the claimant for services then being rendered by him, were insufficient to establish, either that such services were not contemplated by the contract, or that there was an agreement ta pay extra therefor.
*898 II
The appellant contends that since her father made a statement in her presence that he wanted her to have more than had been provided for her in his will, and from time to time told other members of the family that he wanted his daughter, the claimant, to have more than was provided for her in his will because she had been good to him, these statements were sufficient to establish an implied contract for which compensation may be allowed by the court on a quantum meruit basis.
The appellant cites for our consideration the case of In re Hutchinson’s Estate, 236 Miss. 507, 110 So.2d 926 (1959). After Mrs. Hutchinson suffered a stroke, the claimant and her husband, (son of the decedent) moved into the home of Mrs. Hutchinson. The claimant took care of decedent as if she had been a baby. The decedent was bedridden, and finally non compos mentis. Before the decedent became mentally ill, she said in the presence of the claimant, and others, that she wanted her daughter-in-law to have what she had after her death, in return for the services rendered. This Court pointed out that since decedent reasonably knew that her daughter-in-law expected payment for her services, this evidence established an implied contract, for which compensation should be allowed on a quantum meruit basis.
The facts in the Hutchinson case may be distinguished from the facts in the instant case in several particulars. The claimant in that case was a daughter-in-law and owed no duty, legal or moral, to the decedent, to take care of her as if she were a baby. The facts show that claimant expected payment for her services. Moreover, the law will imply a contract to furnish necessities and services to a non conir-pos mentis person, and will authorize payment to a person who furnishes these essentials, out of the estate of such non compos mentis. 44 C.J.S. Insane Persons §§ 114 — 115 (1945). This rule has been well-established in this State. McCully v. McCully, 175 Miss. 876, 168 So. 608 (1936). Cf. Martin v. De Jarnette, 185 Miss. 76, 187 So. 202 (1939).
After a careful examination of the evidence in this case, and a study of the briefs, we have reached the conclusion that the chancellor was correct in denying the claim of the appellant, for the reasons hereinafter set out.
Although the testimony in this case shows that the decedent stated he wanted to give his daughter, the claimant, more than was set out in his will, because she had been good to him, there is no testimony in the record showing that her services were rendered because she expected pay. The testimony shows that she loved her father, and she wanted to take care of him. There is no evidence that she agreed to wait on him for a consideration, nor is there any evidence in the record that he said that he would pay her if she would wait on him. No contract is shown, either expressed or implied. The evidence showed that she wanted to wait on him, and that he wanted to pay her, but there is no evidence to show that her services were rendered with the expectation of being paid.
We find the following rule expressed in 58 Am.Jur. Work and Labor section 7 at page 515 (1948):
“A promise to pay for services rendered without an express contract as to compensation will not be implied in fact where there are no circumstances or conduct warranting the inference of such a promise or where the circumstances or conduct warrant a contrary inference. Such a promise is not implied where the person benefited has said or done nothing from which such a promise may be inferred, or where, at the time they were rendered, it was intended, understood, or agreed that no payment should be made for them.”
*899 This textwriter also points out in section 11, supra, at pages 519-520 that:
“While it is an elementary rule that wherever service is rendered and received, a contract of hiring, or an obligation to pay compensation, will generally be presumed, it is generally agreed that among the factors which qualify the scope of this rule are to be reckoned the circumstance that there existed between the party who rendered and the party who accepted the services in question a kinship by blood or marriage, and the circumstance that they were connected by domestic ties similar to those which are ordinarily associated with kinship. The relationship between the parties may repel the idea of a contract to pay for personal services rendered by one person to another. If there exists such a relationship between the parties as to create a moral or legal obligation upon the claimant to render personal services for the other, the idea of the contract to pay for such services is repelled and the presumption is that they were rendered in response to that obligation, without thought of compensation. In such cases, before the claimant can recover, in the absence of an express promise to pay it must be shown that the services were actually rendered under mutual expectation of payment.
“ * * * It is also clear where services are rendered by one member of a family to another and they are such as are usually performed by persons in that relation, the presumption ordinarily arises that they are gratuitous.
In the case of Hoyle v. Smith, 113 Miss. 729, 74 So. 611 (1917), this Court said:
“The claim of Mrs. Smith might naturally arouse one’s sympathy and appeal to one’s sense of justice. But there can be no obligation on the part of the estate here proceeded against in the absence at least of an implied obligation or contract. The proof shows without dispute that the two old sisters, Mrs. Smith and Miss Hoyle, lived together upon their joint property as members of the same household, and that the attention and care which Mrs. Smith lavished upon her invalid sister was prompted by feelings of natural love and affection, and that her services as caretaker were not rendered in pursuance of any contract whatever or with any expectation of compensation. * * *
“There is no evidence that Mrs. Smith ever expected remuneration. The situation of the parties, their relationship one to the other, and the circumstances under which they lived as members of the same household, raise the presumption that the services were intended to be gratuitous. Evidence to overcome this presumption should be clear and positive. If this rule is not strictly enforced, then a wide avenue is opened up for the presentation of padded and fraudulent claims against the estates of decedents brought forward by relatives for the first time after the death of the party whose estate is sought to be charged. * * *” 113 Miss. at 734-735, 74 So. at 612-613.
We are of the opinion therefore that the evidence introduced in this case does not overcome the presumption that the appellant rendered services because of her love and affection for her father. The proof does not establish an implied contract. This is particularly true in view of the rule that the evidence to overcome the presumption must be clear and positive. Hoyle v. Smith, supra. See also Kalavros v. Deposit Guaranty Bank & Trust Co., 248 Miss. 107, 158 So.2d 740 (1963). The decree of the chancery court will therefore be affirmed.
Affirmed.
ETHRIDGE, C. J., and JONES, BRADY and INZER, JJ., concur.