SUGG, Justice:
Mary Ellen Huff, appellee, filed her petition in the Chancery Court of the Second Judicial District of Harrison County, Mississippi claiming reimbursement for services rendered Susie Fleeton, deceased, in the amount of $19,600. The chancery court allowed the claim in the amount of $14,260 less credit of $1,289.
The credit allowed consisted of payments by the decedent during her lifetime at the rate of $20 per month for a period of 49 months totaling $980 plus the proceeds of a savings account of the decedent in the amount of $309 collected by appellee.
Appellants, who were the executor of the estate of Susie Fleeton and the devisees and legatees under her last will and testament, appealed and assigned six errors.
The second assignment of error is: “The decree entered in the court below was clearly contrary to the weight of the evidence and findings of facts by the chancellor were manifestly erroneous.”
A review of the testimony is necessary to measure the proof of appellee by the applicable law to determine if appellee met the burden of proof required to establish her claim.
Decedent, a second cousin of appellee, moved from California into the home of appellee in 1966 and remained there until *809 1967 when she moved from appellee’s home into an apartment owned by decedent. Thereafter decedent returned to the home of appellee weekly and remained there from Wednesday until the weekend, until she entered the hospital in June, 1970.
Decedent paid appellee $20 per month after returning from California, and on January 21, 1971 purchased Series E Savings Bonds having a maturity value of $2,800 in the name of appellee and decedent. Two or three months later decedent cashed the bonds and had them reissued substituting Clemon Hoyd for ap-pellee.
Appellee introduced 6 witnesses, 4 of whom testified as to the care she gave decedent. Each of the 4 witnesses testified that they rendered services to the decedent for which they received no remuneration and expected none.
Decedent was ambulatory during most of the period of time in question, but did not have control of her bladder and bowels at all times, and it was necessary for someone to clean up after her from time to time.
Sarah Hatcher, a sister of appellee, testified with reference to the facts of the care given decedent by appellee and stated that decedent told her that because of appellee’s kindness she was going to give her some money. Sarah Hatcher lived in the home with her sister during a part of the time that decedent was in appellee’s home.
A next door neighbor of decedent, Emily Pruitt, testified that decedent’s health was such that she could “get around pretty good”; that decedent “would have sick days and days she felt well” and that she was not bedridden. Decedent had a roomer named Inez and this roomer, together with the witness and Bessie Carter, rendered services to the decedent. She also said that other people helped, among them being a nephew by marriage, Clemon Hoyd, and an individual named Richard. When decedent first moved to her own apartment she was able to prepare her own meals, but later the witness, appellee, and Jessie Miller brought meals to decedent.
Estella Trainer said she first came in contact with decedent after Hurricane Camille which occurred in August, 1969 and that she would go to the home of decedent when “it thundered and lightninged,” but she had never been there when appellee was present. She did not testify about any services rendered decedent by appellee.
Bessie Carter lived in the duplex with decedent and testified that she, .Inez and Emily, helped the decedent. She said she had seen appellee fix food for the deceased at times, but the deceased was capable of waiting on herself and had bladder and bowel control at times. According to this witness, decedent did not live with appellee for six months when she first came from California because it did not take the tenant, Otis Hooker, six months to move out of the apartment that decedent later occupied. Inez lived with the decedent for an undetermined period of time.
Stella McGee occupies an apartment in appellee’s home and testified in detail about the care given decedent by the appel-lee.
Estella Trainer and Stella McGee said that decedent told them that she was going to leave appellee a will because of the care given. Sarah Hatcher and Emily Pruitt testified that decedent told them she was going to give appellee some money.
A summary of the evidence adduced by appellee shows that decedent lived with her for an undetermined period of time beginning in 1966; that decedent moved to her own apartment in 1967; that she returned to appellee's home each week and stayed for a few days; that appellee rendered personal and nursing services to decedent; that decedent was able, at all times, to pay for such services; that other people rendered similar services except decedent did not live in their home; that decedent paid appellee $20 per month for the entire peri *810 od; that appellee received $309 from a joint savings account set up by decedent; that the parties were distantly related, but not to the extent that appellee was obligated to care for decedent; that decedent made statements she was going to pay ap-pellee either by will or otherwise, for her services, but no proof of an express contract for remuneration was offered, unless the payment of $20 per month by decedent to appellee was a result of an express contract; and, that appellee was regularly employed during most of the time covered by the claim and also attended the needs of her sick husband and sister, Sarah Hatch-er.
We have stated that such claims, brought up for the first time after the death of a decedent, are looked upon with disfavor, and proof to establish such a claim must be clear and convincing. In Collins’ Estate v. Dunn et ux, 233 Miss. 636, 103 So.2d 425 (1958) this Court stated:
It is generally held that an oral agreement to convey land by will or otherwise is within the statute of frauds, and specific performance of such agreement cannot be forced. Ellis v. Berry, 145 Miss. 652, 110 So. 211. But this Court has recognized the principle that, when parties make an oral agreement that one is to care for and support the other and that the latter will make compensation therefor and such services are rendered, but not paid for by the latter during his lifetime, the party who has rendered the care and provided the support under such an agreement may recover therefor on the quantum meruit. Ellis v. Berry, supra; First National Bank v. Owen, 177 Miss. 339, 171 So. 4; Hickman v. Slough, 187 Miss. 525, 193 So. 443; In re Estate of Whittington, deceased, 217 Miss. 457, 64 So.2d 580. This Court has said, however, many times, that claims of the character mentioned above, brought up for the first time after the death of the decedent, are looked upon by the courts with disfavor; and in order to maintain such a claim the evidence must clearly establish a contract, express or implied, between the claimant and the decedent, for the payment of compensation for such services. Bell v. Oates, 97 Miss. 790, 53 So. 491; Ellis v. Berry, supra; Wells et al v. Brooks, 199 Miss. 327, 24 So.2d 533. (233 Miss. at 644, 103 So.2d at 430.) (Emphasis added.)
Wells v. Brooks, 199 Miss. 327, 24 So.2d 533 (1946) discussed the burden of proof necessary to be met by one filing claim against the estate of a deceased person for personal services rendered deceased, and held:
It is true that in claims of this type the burden is on the claimant to establish by clear and convincing evidence the services were rendered pursuant to an understanding, express or implied. Bell v. Oates, 97 Miss. 790, 53 So. 491. . . . (199 Miss. at 335, 24 So.2d at 536.)
We have announced that when a person, not a member of the immediate family, without special invitation, lives with another person, there is a presumption that the person so coming to live, if financially able, will arrange to pay a reasonable sum for such board and will make some agreement to do so. In Tarver v. Lindsey, 161 Miss. 379, 137 So. 93 (1931), Justice Griffith, speaking for the Court, stated:
When a person not a member of the immediate family — by which is meant, in this connection, those who have not in the ordinary course of the family life lived under the same roof — comes without special invitation to another person to board or to live, there is the presumption that, if the person so coming to live or to board is financially able, he will arrange to pay a reasonable board, and will make some agreement so to do. This has its foundation in the presumption of honesty. The testimony now discloses that, when Mr. Eastep came, at his own invitation, to the home of claimant and arranged for board, he was, as he knew, then financially able to pay and *811 to continue to pay the agreed amount. And thus the testimony that the contract was then made so to pay is strengthened and in this case made amply sufficient. (161 Miss. at 384, 137 So. at 94.)
The Court found that an express contract to pay board in the amount of $15 per month was clearly shown and allowed the claim to that extent less certain credits that were applied.
In the case at bar decedent was, in the words of one witness “tight with her money”, and in view of the undisputed proof that she received services from many individuals who did not receive or expect pay therefor, coupled with the fact that decedent paid appellee $20 per month for a period of 49 months strongly indicate that there was an express contract for the payment by decedent the sum of $20 per month to appellee for her services. There is no proof in the record of an agreement between appellee and decedent that decedent would devise or bequeath appellee any specific property for the care to be given to her, nor is there proof that the amount paid was inadequate.
We also recognize that, in proper cases, an obligation is implied by law to pay for services on the basis of quantum meruit on either an express or implied contract. In Hickman v. Slough, 187 Miss. 525, 193 So. 443 (1940) this Court reversed the lower court and allowed compensation for a claim for services on quantum meruit and stated:
Where there is a promise, either express or implied, to pay for services rendered, and the amount of the compensation is not agreed upon, the law will imply an obligation to pay on a quantum meruit. First Nat. Bank v. Owen, supra, and other authorities above cited. (187 Miss. at 530, 193 So. at 445.)
In Tarver v. Lindsey, supra, the Court stated:
We have written at length, because the finding of the chancellor, upon the facts was adverse to the claimant, and the rule is that the finding of the chancellor on the facts must stand unless manifestly wrong, and this includes the reasonable inferences that may be drawn by the chancellor, as the trier of the facts. (161 Miss. at 388, 137 So. at 96.)
We are of the opinion that the most reasonable inference to be drawn from the undisputed testimony is that decedent paid appellee the amount agreed •on; therefore, there was no obligation of the estate to pay for the services on the basis of quantum meruit and the court erred in so holding.
We hold appellee did not show by clear and convincing evidence that she was entitled to additional compensation for services rendered decedent under either an express or implied contract; that under the facts set forth above, the chancellor was manifestly wrong in holding appellee was entitled to additional compensation on the basis of quantum meruit; and that the most reasonable inference to be drawn from the proof is that decedent was able to pay, and did pay, during her lifetime for the services of appellee, with an additional payment in the form of a savings account collected by appellee after the death of decedent.
Reversed and rendered.
RODGERS, P. J., and BRADY, PATTERSON and SMITH, JJ., concur.