## KENNARD, et al. *v.* EVANS, et al.

June 8, 1953

No. 38793 34 Adv. S. 108 65 So. 2d 285

*Kelly J. Hammond* and *Davis & Davis,* Columbia, and *Jackson & Ross,* Jackson, for appellants.

178

*Travis & Travis,* Hattiesburg, and *Sebe Dale, Jr.,* Columbia, for appellees.

Brief for appellants.

180

Brief for appellees and cross-appellants.

KYLE, J.

This case is before us on appeal by Mrs. Minnie L. Kennard and others, contestants, from a decree of the chancery court of Marion County rendered in favor of John M. Evans, administrator C.T.A. of the estate of Mrs. Lucy E. Polk, deceased, and others, proponents of the last will and testament and codicil of the deceased, in a will contest case involving the validity of an instrument purporting to be a revocation of said will and codicil.

Mrs. Lucy E. Polk, testatrix, died on November 15, 1950. Her husband, M. E. Polk, had died on November 5, 1950. Mrs. Polk was 72 years of age at the time of her death, Mr. Polk was 80 years of age at the time of his death. Neither of them left children or other lineal descendants surviving. But Mr. Polk, prior to his marriage to Mrs. Lucy E. Polk in 1927, had adopted two sons, John M. Evans and Joe E. Evans, who were the children of his first wife's sister. On September 30, 1930, Mr. Polk and his wife executed separate wills, in which each devised to the other all property owned by him or her at the time of his or her death, and on October 10, 1950, Mr. Polk executed a codicil to his will, in which it was provided that in the event Mrs. Polk should not be living at the time of his death, all of his property should go to the above mentioned adopted sons. And on the same day Mrs. Polk executed a codicil to her will in which it was provided that in the event Mr. Polk should not be living at the time of her death all of her property should go to the above named John M. Evans and Joe E. Evans. Mrs. Polk and her husband were patients at the Methodist

Hospital in the City of Hattiesburg at the time the codicils were executed, and both died at the hospital.

On December 5, 1950, the last will and testament of Mrs. Polk and the codicil dated October 11, 1950, were admitted to probate in common form by the chancery court of Marion County, and letters of administration with the will and codicil annexed were issued to John M. Evans as administrator of her estate. On December 14, 1950, Mrs. Minnie L. Kennard and others, legal heirs of Mrs. Polk, filed a petition in the chancery court against John M. Evans, as administrator, and John M. Evans and Joe E. Evans, as devisees and legatees under the will and codicil of Mrs. Polk, who were made parties defendant in the petition, in which the petitioners alleged that Mrs. Polk, prior to her death, had executed an instrument of writing by which she had revoked her last will and testament and the codicil dated October 10, 1950, and that she had died intestate. A copy of the revocation instrument which the witnesses alleged had been executed on November 7, 1950, was filed as an exhibit to the petition, and the petitioners asked for the issuance of process for the above named John M. Evans and Joe E. Evans as defendants, and that upon the hearing of the petition the probate of the above mentioned will and codicil be annulled and that said instruments be denied probate and that the court decree that Mrs. Polk died intestate and that the heirs were entitled to the estate.

The instrument of revocation, alleged to have been executed by Mrs. Polk on November 7, 1950, was as follows:

"Revocation of the Last Will and Testament of Mrs. M. E. Polk.

"Know all men by these presents: That whereas the undersigned, in Hattiesburg, Mississippi, in the Methodist Hospital, in Room 127, State of Mississippi, did on the —— day of October, 1950, make, execute, publish and

declare my last will and testament in writing, bearing date the day and year aforesaid.

"And whereas I now desire to revoke said will.

"Now, therefore, I, the said Mrs. M. E. Polk, being of sound mind and memory, do make, publish, and declare this my codicil to my last will and testament by revoking said will and testament.

"Witness my signature this the —— day of November, A.D. 1950.

"WITNESSES: /s/ Mrs. Lucy E. Polk
"Nadine Cochran Mrs. M. E. Polk"
"Mrs. V. Easterling"

When the matter came on for hearing at the February, 1951, term of the Court, the chancellor ordered that the petition be amended so as to make all of the heirs of Mrs. Polk parties complainant or parties defendant; and an amended petition was filed a few days later for the purpose of bringing in all of the heirs of the deceased. John M. Evans and Joe E. Evans answered the petition, and in their answer denied that the testatrix had revoked the codicil dated October 10, 1950, by the execution of a valid instrument of revocation, and in their answer the defendants challenged the validity of the revocation instrument on the grounds (1) that the instrument failed to indicate the date on which it had been executed; (2) that the testatrix at the time of the execution of the instrument did not have sufficient mental capacity to execute the same; (3) that the execution of the instrument had been procured by the undue influence, duress and fraud of the testatrix' sister, Mrs. Minnie L. Kennard; and (4) that the instrument had not been executed and attested by the witnesses as required by the statute, and that the witnesses who signed the same had not been informed by the testatrix that the instrument was a revocation of her will and in fact did not know the nature of the instrument which they were called upon to attest.

The defendants also filed a general demurrer to the original and amended petitions, in which they challenged

the legal sufficiency of the petition on the ground that the revocation instrument was void on its face because of its uncertain meaning, that the instrument was not dated, and that the instrument by its terms purported to revoke a will and not a codicil.

The chancellor overruled the demurrer, and a jury was empaneled to try the issues presented by the answer, as in other will contest cases.

The proponents of the will and codicil introduced the will dated September 30, 1930, and the codicil dated October 10, 1950, and the record of the probate thereof in common form. The petitioners, who are referred to in the record and the briefs as the contestants, then offered in evidence the revocation instrument and the affidavits of the subscribing witnesses to prove the execution of the instrument by the testatrix. The proponents objected to the admission of the instrument itself and the affidavits of the witnesses, but the objection was overruled.

The contestants then offered as their first witness Miss Nadine Cochran, one of the two subscribing witnesses to the revocation instrument. Miss Cochran testified that she witnessed the execution of the instrument by Mrs. Polk on November 7, 1950, while Mrs. Polk was on her sick bed in the hospital at Hattiesburg; that Mrs. Polk stated to her that she wanted to revoke her will and requested her to witness the same, and that she saw Mrs. Polk sign the revocation instrument, and that she then signed it as a witness in Mrs. Polk's presence; that Mrs. V. Easterling, the other subscribing witness, was not present when Mrs. Polk signed the instrument and when she signed the same as a witness, but that Mrs. Easterling, who was on duty as a nurse the day the instrument was executed, came into the room a short time thereafter, and Mrs. Polk asked her to witness her signature; that Mrs. Easterling then signed her name as a witness in the presence of Miss Cochran. On cross-examination Miss Cochran was asked the question, "Mrs. Polk didn't tell

Mrs. Easterling that that was her signature to her will?"
Miss Cochran's reply was: "Mrs. Easterling asked me
'Did Mrs. Polk sign it,' and I told her 'Yes'." Miss
Cochran was then asked the question, "Mrs. Polk didn't
tell her that she had already signed it and that she
wanted her to sign it as a witness?" And, in answer to
that question, Miss Cochran said, "I don't remember
whether she did or not, but her signature was already
there."

Miss Cochran was a registered nurse and helped nurse
Mrs. Polk while she was in the hospital. She stated that
Mrs. Polk, at the time she executed the revocation instru-
ment, was possessed of a sound and disposing mind, but
that she was a very sick woman. Miss Cochran was the
only witness who testified concerning the execution of
the revocation instrument. The record shows that a sub-
poena had been issued for Mrs. V. Easterling, the other
subscribing witness, to have her appear and testify but
the sheriff's return on the writ showed that she had not
been found in Forrest County. Several other witnesses
testified that they visited Mrs. Polk while she was in the
hospital, and that in their opinion Mrs. Polk was of sound
mind at the time the revocation instrument was executed.

After the contestants had rested their case, the pro-
ponents made a motion for a directed verdict on all issues
set forth in their answer. The chancellor reserved his
ruling on the motion.

The proponents then offered several witnesses who
testified concerning the physical and mental condition of
Mrs. Polk during the time that she was in the hospital,
and especially during the two weeks next preceding the
date of her death, including Dr. J. P. Culpepper, who
attended her as a physician during her last illness, and
who witnessed the codicil executed by her on October
10, 1950, and Mrs. John Parker, a registered nurse at
the hospital, who saw Mrs. Polk on the day that the re-
vocation instrument was executed. Dr. Culpepper testi-
fied that Mrs. Polk was suffering from a complication of

diseases during the last two or three weeks of her life; that she was in a semicomatose condition as a result of cancer, and that her mental reaction was sluggish; and that in his opinion she was not competent to make a will or revoke a will. His statement was "It is my firm belief that due to the fact that Mrs. Polk was dying with cancer, and that due to the fact that she had to have sedatives and opiates, she was not clear enough to make a decision . . . I don't believe she could make a will." Mrs. Parker testified that "In my opinion, she wasn't in any condition to revoke a will." And several other witnesses who visited Mrs. Polk at the hospital during the last two or three weeks before her death testified concerning her mental incapacity during that time.

After both sides had rested the court overruled a motion for a directed verdict that had been made by the proponents at the conclusion of the evidence offered by the contestants. Each side then requested a peremptory instruction. The court refused both requests, and the case was submitted to the jury on the issues presented in the defendants' answer and the testimony taken during the trial. The jury returned a verdict for the contestants. The proponents filed a motion for a new trial, which the chancellor took under advisement, and at the February, 1952, term of the court the chancellor sustained the motion for a new trial without assigning his reasons therefor.

At the July term of the court the court permitted the proponents to file a second general demurrer in which they alleged the same grounds for demurrer as those alleged in the first demurrer which the chancellor had overruled. The chancellor, after hearing arguments on the demurrer, held that the revocation instrument was insufficient as a matter of law to effect a revocation of the will and codicil, and the chancellor entered a decree sustaining the demurrer. The contestants declined to plead further; and the court then entered a final decree dismissing the original and amended petitions on the

merits. From that decree the contestants have prosecuted this appeal, and the proponents have filed a cross assignment of errors.

The appellants have assigned as errors (1) the action of the court in sustaining the demurrer to the original and amended petitions contesting the codicil dated October 10, 1950, and in entering a final decree dismissing the original and the amended petitions; and (2) the action of the court in granting a new trial after the jury had returned a verdict in favor of the contestants.

The appellees, in their cross assignment of errors, say that the court erred in refusing to grant the peremptory instruction requested by proponents at the conclusion of the evidence, when the case was tried at the November 1951 term of the court.

We think that the court erred in sustaining the demurrer to the original and amended petitions. But we also think that the court erred in refusing to grant the peremptory instruction requested by the proponents when the case was tried before the jury.

 The revocation instrument signed on November 7, 1950, was not void on its face for any of the reasons assigned by the proponents in their demurrer. Section 658, Code of 1942, is a part of the code chapter on Wills, and provides as follows:

"A devise so made, or any clause thereof, shall not be revocable but by the testator or testatrix destroying, canceling or obliterating the same, or causing it to be done in his or her presence, or by subsequent will, codicil, or declaration, in writing, made and executed . . ."

Whether the instrument of revocation signed by Mrs. Polk on November 7, 1950, was in its nature a will, a codicil of merely a declaration in writing, it was in form sufficient to effect a revocation of the codicil dated October 10, 1950, if properly executed by her in conformity with the requirements of the statute, and whether the instrument had been executed in compliance with the

requirements of the statute was a question of fact to be determined according to the proof.

██ The instrument of revocation was not void because it failed to show the exact date on which it was executed. This Court held in the case of Lee v. Stewart, et al., 139 Miss. 287, 104 So. 89, that there is nothing in the statute that requires attested wills to be dated. ██ Neither was the instrument of revocation void because of the failure of the instrument to show the exact date of the testamentary instrument referred to which the testatrix proposed to revoke. The prior instrument which the testatrix undertook to revoke was referred to in the revocation instrument as the last will and testament which she had executed in Room 127 of the Methodist Hospital, in the City of Hattiesburg, "on the —— day of October 1950." It is not claimed that the testatrix had executed any other testamentary instrument while she was in Room 127 of the Methodist Hospital in Hattiesburg during the month of October, and we think that the instrument which the testatrix proposed to revoke was referred to with sufficient certainty to identify it. The testamentary instrument referred to could be readily identified with the aid of parole evidence in such manner as to exclude the possibility of a mistake in the identification. 57 Am. Jur., pp. 195, 196, Wills, Sec. 235.

"A reference to the will in the codicil constitutes a sufficient identification of the will, even though the instruments are deposited in different places, provided it identifies the will with reasonable certainty." 57 Am. Jur. p. 415, Wills, par. 605.

██ The controlling factor in this case, however, is that the evidence offered by the contestants to establish the proper execution of the alleged revocation was insufficient to show that the instrument had been executed by the testatrix and attested by the subscribing witnesses, in compliance with our own statute as construed by this Court.

In the early case of Heatherington v. Pipes, 32 Miss. 451, it was held that publication of a will actually signed by the testator in the presence of the attesting witnesses is unnecessary under our statute. But the rule is otherwise where the will is not signed by the testator in the presence of the witnesses.

In the case of Miller v. Miller, 96 Miss. 526, 51 So. 210, this Court said that it is not essential to a valid attestation of the testator's signature, under our statute, that the subscribing witnesses shall see the testator sign the will. "It is enough if he shall produce the will, declare it to be his will, and state that the signature appended to the will is his, and that he wrote it."

In the case of Maxwell v. Lake et al., 127 Miss. 107, 88 So. 326, the Court said:

"It is true that it is not necessary in this state for the witnesses to see the testator sign a will, but, if he does not sign it in their presence, there must be something to call the witnesses' attention to the fact that it is his will, or that it is his signature, or something to show the witnesses the purpose for which the signing is requested. The court does not require any particular form of words to be used by the testator, but he must indicate in some way so as to inform the witnesses as to the purpose of their signing the will."

In the case that we have here, it is admitted that Mrs. Polk did not sign the revocation instrument in the presence of Mrs. Easterling, one of the subscribing witnesses. Mrs. Polk did sign the instrument in the presence of Miss Cochran, and according to Miss Cochran's testimony, Mrs. Polk informed her of the nature of the instrument that she was signing. But Mrs. Easterling was not present when Mrs. Polk signed the instrument, and no where does it appear from Miss Cochran's testimony that Mrs. Polk told Mrs. Easterling that the instrument which she was to witness was a revocation of her will or that the instrument was testamentary in character, nor is it clear that Mrs. Polk told Mrs. Easterling that the

signature appended to the instrument was her signature. Miss Cochran testified that "Mrs. Easterling asked me 'Did Mrs. Polk sign it,' and I told her 'Yes'." Miss Cochran was the only witness to testify concerning the execution and attestation of the revocation instrument.

Under the rule laid down in the Miller case, supra, and the Maxwell case, supra, since Mrs. Polk did not sign the revocation instrument in the presence of Mrs. Easterling, it was necessary that Mrs. Polk inform Mrs. Easterling that the instrument which she was executing was a revocation of her will, and that the signature appended to it was her signature, and that she wrote it, or that Mrs. Polk make known to Mrs. Easterling in some way that the instrument was a revocation instrument and that she had signed it. Austin v. Patrick, 179 Miss. 718, 176 So. 714.

But the proof fails to show that Mrs. Polk did make known to Mrs. Easterling that the instrument was a revocation of her will, and from Miss Cochran's testimony it appears that Mrs. Easterling learned from Miss Cochran, and not from Mrs. Polk, that Mrs. Polk had signed the instrument.

The burden of proof rested upon the contestants, the petitioners in the original and amended petitions to prove the due execution and attestation of the revocation instrument, and this they failed to do.

We think that the court should have granted the peremptory instruction requested by the proponents of the will and the codicil, and that a decree should have been entered denying the relief prayed for in the original and amended petitions on the ground that the proof was insufficient to establish the validity of the revocation instrument.

The chancellor reached the right result in his final decree, and although there was error in the action of the court in sustaining the demurrer to the original and amended petitions, the appellants are not in a position

to obtain any benefit from a reversal of the ruling of the court on the demurrer, because of the prior error of the court in refusing to grant the peremptory instruction requested by the appellees and cross appellants at the conclusion of the evidence on the trial of the issues presented by the defendants' answer.

For the reasons stated above the decree of the lower court dismissing the original and amended petitions of the contestants with prejudice is affirmed.

Affirmed.

*Hall, J.,* took no part.

All other justices concur.