490 So.2d 827 (1986)
Herman TROTTER
v.
Billy Joe TROTTER, Sr., et al.
No. 55573.
Supreme Court of Mississippi.
May 28, 1986.
*829 Jack W. Brand, Robert M. Logan, Jr., William C. Brabec, Gerald, Brand, Watters, Cox & Hemleben Newton & Jackson, for appellant.
E. Randolph Noble, Jr., Robertshaw & Merideth, Greenville, for appellees.
Before WALKER, P.J., and PRATHER and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court.
The Chancery Court of Newton County, Mississippi, set aside two wills of Mrs. Louise Trotter Rooney, Deceased, causing her property to pass by intestacy, subject to various other rulings of the chancery court. Herman Trotter, executor of the first will and sole beneficiary, appeals.
On May 26, 1980, Louise Trotter Rooney executed a holographic will which made Herman Trotter her executor and sole beneficiary. In June of 1980, she contracted not to revoke the will in exchange for Herman Trotter's promise that he would take care of her for the remainder of her life. The 1980 will made no mention of the contract not to revoke.
On May 7, 1982, Louise Trotter Rooney executed another holographic will, which did not specifically revoke nor refer to the 1980 holographic will, but which did purport to revoke all other wills. In the 1982 will, which appointed no executor, Louise Trotter Rooney left her property to her cousin, Billy Joe Trotter, Sr., his son, Billy Joe Trotter, Jr., four nieces and her nephew, Herman.
On November 18, 1982, Louise Trotter Rooney died. Herman Trotter then probated the holographic will of May 26, 1980, and this will was admitted to probate in January of 1983.
On February 18, 1983, Billy Joe Trotter filed to substitute the May 7, 1982, will for the 1980 will and for the appointment of an administrator, c.t.a. On March 9, 1983, Herman Trotter filed a caveat to the 1982 will on the grounds that the 1980 will which he had first probated was the true will, that the 1982 will was executed at a time when Louise Trotter Rooney was of unsound mind and without testamentary capacity and was subject to undue influence, and for the further reason that he was the beneficiary of an oral contract with Mrs. Rooney not to revoke the 1980 will.
On March 29, 1983, Billy Joe Trotter, Sr. additionally charged that the 1980 will leaving all the property to Herman Trotter was the result of undue influence.
The case was tried and on November 23, 1983, the trial court issued an opinion which found that at the time Mrs. Rooney executed the 1982 will she was without testamentary capacity and therefore the 1982 will was void.
The chancellor then found that Mrs. Rooney did not receive from Herman Trotter the type of care that she had contracted for and, therefore, as a matter of law, Herman Trotter had breached his verbal contract with Mrs. Rooney and that this breach rendered the holographic will of May 26, 1980, void and of no effect, thereby causing Louise Trotter Rooney to have died intestate.
The chancellor found that Herman Trotter, for the services that he rendered, was entitled to reasonable compensation which *830 the court found to be $10,000, plus a 1963 Cadillac of Mrs. Rooney's to which Herman Trotter already held title.
The chancellor found that Mrs. Rooney was not of sound mind at any time in 1982, and, therefore, when her certificate of deposit in the amount of $46,000.00 was placed in both her name and Herman Trotter's name jointly she was without capacity and the transfer was void. The chancellor also found that many years ago Mrs. Rooney made a gift of her dining room suite to Billy Joe Trotter, Jr., with the stipulation that she would retain possession and use thereof during her lifetime. He, therefore, upheld the inter vivos gift to Billy Joe Trotter, Jr.
The chancellor appointed a neutral administrator to administer the intestate estate of Mrs. Rooney.

I.

DID THE LOWER COURT ERR IN SETTING ASIDE THE HOLOGRAPHIC WILL OF MRS. LOUISE TROTTER ROONEY DATED MAY 26, 1980?
The chancellor found as fact that in June of 1980 the testatrix sent the appellant her holographic will executed on May 26, 1980, and that she offered to agree not to revoke the will if the appellant promised to take care of her and her property for the rest of her life. The appellant was the sole beneficiary of this will. After deliberation with his wife, the appellant promised to do so. The chancellor found that at this time an oral contract not to revoke the will was entered.
A contract to devise or bequeath property by will is valid. See Estate of McKellar v. Brown, 404 So.2d 550, 552 (Miss. 1981).
The chancellor's holding that the 1980 will was void because of the breach of contract by the appellant was based on Johnston v. Tomme, 199 Miss. 337, 24 So.2d 730 (1946). The often-quoted relevant holding in Tomme was discussed in Voss v. Stewart, 420 So.2d 761, 764-65 (Miss. 1982):
Although this court has acknowledged that an oral promise to devise property is enforceable where services were performed pursuant thereto, it has nevertheless circumscribed the essentials of such contract in addition to the requirement of "clear, definite and certain" evidence.
In Johnson v. Tomme, 199 Miss. 337, 24 So.2d 730 (1946), we stated:
The will, when written in conformity and compliance with the agreement, was a consideration which belonged to the appellee. The testator had no right to revoke it, and its attempted revocation, if deliberately made, constituted a fraud upon her. 199 Miss. at 347, 24 So.2d at 732.
We do not lay down a general rule allowing the establishment of a trust by oral agreement, nor do we design a model for all cases. We do say that where a testator executed a will in compliance with an oral agreement with the devisee that the latter will render unique and necessary personal services to him involving a substantial change in the status and manner of living of the promisee, and such services have been performed so that a revocation of the will amounts to fraud upon the latter, rendering it impossible or impracticable to restore him to the situation in which he was prior to the contract, equity will hold such will to be irrevocable and the rights thereunder may be established. 199 Miss. at 351-52, 24 So.2d at 734.
(emphasis added).
Presumably the rare remedy afforded under Tomme, which is in essence a type of specific performance, is limited to devises. See, e.g., Old Ladies Home Ass'n v. Hall, 212 Miss. 67, 52 So.2d 650 (Miss. 1951); Frierson v. Moorehead, 211 Miss. 811, 51 So.2d 925 (Miss. 1951); Denson v. Denson, 203 Miss. 146, 33 So.2d 311 (Miss. 1948). At Mrs. Rooney's death, her estate consisted solely of personal property.
In any event, a promisee of an oral contract to make a will, who provides the *831 services contemplated by the contract, may at the very least be entitled to the reasonable value of the services actually rendered, known as the quantum meruit, as a claim against the estate if the promisor breaches the contract by making a different devise or bequest than that which was contracted for. Liddell v. Jones, 482 So.2d 1131 (Miss. 1986); Ellis v. Berry, 145 Miss. 652, 110 So. 211 (1926). If the promisee parted with any other valuable consideration for the contract, he may well have an action against the estate for that consideration.
The above discussion is relevant to this appeal only as background because the issue in this case does not involve a promisee suing the promisor/testator's estate on the basis of a breach of contract to make a will by the promisor/testator. The issue here does not concern what remedies the appellant, as promisee, would have against Mrs. Rooney's estate if the 1982 will had been found to be valid and, therefore, to revoke the 1980 will. Conversely, it does not concern what defenses Mrs. Rooney's estate would have against such actions. The issue before us is whether the purported breach of the contract by Herman Trotter, the promisee, has the effect of revoking the otherwise valid 1980 will.
As a threshold proposition, we point out that the "principles which apply to a contract to make a will apply to contracts not to revoke a will which the promisor has made theretofore... ." 1 Bowe-Parker: Page on Wills § 10.1 (1960). We also note that the 1980 will made no mention of the contract; therefore, it was not conditioned upon the performance of the contract. See Stovall v. Stovall, 360 So.2d 679, 681 (Miss. 1978).
In Page on Wills, it was said, "The contract [to make a will or not to revoke a will] cannot be used to prevent admission to probate of a will which had been made in violation of the provisions of the contract." Id. § 10.3. See, e.g., Allen v. Bromberg, 147 Ala. 317, 41 So. 771 (1906) But compare Walker v. Yardbrough, 200 Ala. 458, 76 So. 390 (1917). Therefore, it was inappropriate for Herman Trotter to allege, as a fourth defense to the probate of the 1982 will, the contract not to revoke. The contract not to revoke was not a defense to the probate of the 1982 will. If the 1982 will had been admitted and substituted for the 1980 will, Herman Trotter's appropriate remedy would have been on the contract, pursuant to the cases mentioned above. More than likely, Herman Trotter's remedy would have been limited to a claim for quantum meruit against the Rooney estate, which is in essence what the chancellor gave him.
More important, concerning the effects of Herman Trotter's purported breach, in Page, it was stated: "If the promisee has agreed to render services to the promisor ... his breach of such covenant discharges the contract if the promisor so elects." Id. § 10.19. See, e.g., Clarke v. Portland Trust Bank, 221 Ore. 339, 351 P.2d 51, 61 (1960).
In Page, it was also stated: "If the promisee fails to perform all of his covenants but the promisor does not elect to treat such non-performance as a breach, the heirs and next of kin, on the death of the promisor, cannot set up such breach." Id. § 10.19. See, e.g., Ledingham v. Bayless, 218 Md. 108, 145 A.2d 434, 440-41 (1958).
Therefore, even if the promisee breaches the contract during the life of the promisor, the heirs of the promisor cannot set up the breach as a defense to the enforcement of the contract if the promisor knew of the breach during his life but elected not to rescind the contract or take any other appropriate remedy. For our purposes, the chancellor found as a matter of fact that a contract not to revoke the will existed beginning in June, 1980. The chancellor further found that the Herman Trotter breached that contract and, presumably, Mrs. Rooney rightfully rescinded the contract.
However, a breach of a contract not to revoke a will is just that: a breach of a contract. It is not grounds for contesting the will pertaining to the contract. In Re *832 Estate of Schmalz, 58 Wis.2d 220, 206 N.W.2d 141 (1973); In Re Derusseau's Will, 175 Wis. 140, 184 N.W. 705, 708 (1921); Page, § 10.19. The remedies, if any, of the promisor's heirs lie on the contract or perhaps upon a constructive trust theory.
The question of whether a contract not to revoke a will can be enforced is a separate question from whether a will has been revoked. The better view is that a contract not to revoke a will may become irrevocable, as long as the promisee performs in accordance with the contract. Conversely, the contract may be rescinded by the promisor if the promisee breaches the contract. However, a will is valid until revoked and, by its inherent nature, is revocable until the death of the testatrix. The fact that a contract not to revoke a will may have been properly rescinded by the testatrix does not mean that the will itself was revoked.
Miss. Code Ann. § 91-5-3 (1972) provides the only means by which a will may be expressly revoked. Livelar v. Arnold, 233 So.2d 760 (Miss. 1970). Generally, it can be accomplished only by physical destruction of the will or "by subsequent will, codicil, or declaration, in writing, made and executed." Any express instrument of revocation must meet the requirements of the will statute, Miss. Code Ann. § 91-5-1 (Supp. 1985). See Kinnard v. Evans, 218 Miss. 176, 65 So.2d 285 (1953).
Mississippi does recognize that a will may also be impliedly revoked. For example, a validly executed will with inconsistent provisions, but no express revocation clause, revokes an earlier will. In Re Will and Estate of Vavaris, 477 So.2d 273, 277 (Miss. 1985); Wheat v. Lacals, 139 Miss. 300, 104 So. 73 (1925). See also, Caine v. Barnwell, 120 Miss. 209, 82 So. 65 (1919). Cf. Estate of Crawford, 225 Miss. 208, 82 So.2d 823 (1955).
Concerning the implied revocation of a will, this Court has said, "The doctrine of implied revocation has been carefully limited in Mississippi to execution of conflicting deeds or other instruments." In re Stoball's Will, 211 Miss. 15, 50 So.2d 635, 638 (1951). But see McCormack v. Warren, 228 Miss. 617, 628, 89 So.2d 702, 706 (1956). Statements of the testator alone that she intends to revoke the will are not enough. See Ramsey v. Robinson, 346 So.2d 379 (Miss. 1977). Generally, the statements are inadmissible if offered to show an implied revocation. In re Stoball's Will, supra.
Based on the above discussion, we find as follows:
The execution of the 1982 will did not operate to revoke the 1980 will because the chancellor, based upon very substantial evidence, found that Mrs. Rooney lacked testamentary capacity on May 7, 1982, when she wrote the 1982 will. He correctly found that the 1982 will was invalid and of no effect.
The breach of contract by Herman Trotter did not revoke the 1980 will. Mrs. Rooney could have revoked the will after the breach of contract by the execution of another will; however, she did not do so at a time when she had testamentary capacity. "The same degree of mentality required to revoke a will is the same as that required to make one... ." Watkins v. Watkins, 142 Miss. 210, 106 So. 753, 757 (1926).
Therefore, the finding by the chancellor that the 1980 will was revoked, either because of the breach of contract by Herman Trotter or the statements or actions of Mrs. Rooney, especially at a time when she lacked capacity, was manifest error. We conclude that the 1980 will is valid and was entitled to probate.

II.

DID THE CHANCELLOR ERR IN FINDING THAT HERMAN TROTTER BREACHED THE ORAL CONTRACT NOT TO REVOKE THE 1980 WILL?
The answer to this question is immaterial to the outcome of this case and is *833 moot. This is true because a breach of the contract by Herman Trotter was not grounds for contesting the 1980 will, since a breach of a contract by the promissee does not operate as to revoke the will pertaining to the contract. Even if Mrs. Rooney successfully rescinded the contract during her lifetime because of the purported breach, that still was not grounds to contest the will.

III.

DID THE CHANCELLOR ERR IN RENDERING JUDGMENT ON MATTERS WHICH WERE BEYOND THE SCOPE OF THE PLEADINGS?
Herman Trotter contends that the three findings by the chancellor, (1) breach of contract causing the 1980 will to be void, (2) inter vivos transfer of a $46,000 certificate of deposit to Rooney and Herman Trotter by Rooney was void because Rooney lacked capacity to make the transfer, and (3) that Billy Joe Trotter, Jr. acquired the dining room suite by inter vivos transfer, which were additional findings to the finding that the 1982 will was invalid, were beyond the scope of the pleadings.
Herman Trotter contends that this is true in spite of the apparent implications of the language of Rule 54(c) of the Mississippi Rules of Civil Procedure which, in relevant part, provides as follows:
(c) Demand for Judgment. ... Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled by the proof and which is within the jurisdiction of the court to grant, even if the party has not demanded such relief in his pleadings; however, final judgment shall not be entered for a monetary amount greater than that demanded in the pleadings or amended pleadings. (emphasis added).
Herman Trotter also contends that, pursuant to Rule 81(a)(8) of the Mississippi Rules of Civil Procedure, the statutory procedures which are provided for proceedings pertaining to estates govern to the exclusion of any rules which may be in conflict. The relevant conflict here is that, pursuant to Mississippi Code Annotated § 91-7-21, (1972), dealing with caveats against the probate of a will, and Mississippi Code Annotated § 91-7-23, (1972), dealing with contests of a will already probated, the sole issue in such proceedings is devisavit vel non, or will or no will.
We must look to the pleadings filed by the parties to see what issues were presented for decision.
Herman Trotter probated the 1980 will in common form and it was admitted to probate, thereby creating prima facie evidence of the validity of the 1980 will. Miss. Code Ann. §§ 91-7-3 and 91-7-27 (1972).
Billy Joe Trotter, Sr., by his pleadings in which the other appellees joined, was contesting the validity of the 1980 will. Miss. Code Ann. § 91-7-23 (1972). His ground for contesting that will was that the 1982 will was the last will and testament of Mrs. Rooney, thereby revoking the 1980 will. In Re Estate of Stanback, 222 So.2d 660 (Miss. 1969). The sole issue in a will contest is devisavit vel non, or will or no will. § 91-7-23, Perry v. Aldrich, 251 Miss. 429, 169 So.2d 786 (1964). Simply stated, the sole issue presented by Billy Joe Trotter, Sr.'s initial pleadings was whether the 1980 will was invalid as the last will and testament of Mrs. Rooney on the ground that the 1982 will had revoked the 1980 will. By necessity this involved the determination of the validity of the 1982 will.
Billy Joe Trotter, Sr. later filed a response to the affirmative defenses raised by Herman Trotter, and in this response he presented the additional issue of whether the 1980 will was invalid because of undue influence.
The pleadings filed by Herman Trotter were, in addition to being an answer to Billy Joe Trotter Sr.'s allegations concerning the invalidity of the 1980 will, a caveat against or contest of the 1982 will sought to be substituted for probate. § 91-7-21. *834 Again, the sole issue presented was devisavit vel non. The issue presented by these pleadings was whether the 1982 will was invalid on the grounds of lack of testamentary capacity or because of undue influence. Herman Trotter later added the ground that the 1982 will was invalid because of the contract not to revoke. As pointed out above, this is not a ground to contest the probate of a will.
Therefore, the only issues presented to the chancellor by the pleadings, and the only ones pursuant to statute, were the validity of the 1980 and 1982 wills on the grounds alleged. At trial, the parties proceeded to put on proof as if the sole issue was whether the 1980 will was invalid because the 1982 will revoked it. This determination depended on whether the 1982 will itself was valid.
Even Rule 54(c) does not authorize the determinations by the chancellor concerning the inter vivos transfers. Cioffe v. Morris, 676 F.2d 539 (11th Cir.1982); Mineral Industries and Heavy Construction Group v. Occupational Safety and Health Review Com'n, 639 F.2d 1289, 1293 (5th Cir.1981); Jimenez v. Tuna Vessel "Granada", 652 F.2d 415 (4th Cir.1981); McLain-Behm Steel Erectors v. Occupational Safety and Health Review Com'n, 608 F.2d 580, 582 (5th Cir.1979); International Harvester Credit Corp. v. East Coast Truck, 547 F.2d 888 (5th Cir.1977). However, the real reason these determinations by the chancellor were incorrect was because the issues presented to the chancellor were devisavit vel non, will or no will, concerning the 1980 and the 1982 wills on the grounds alleged in the pleadings. This would be true even if Rule 54(c) would provide otherwise. Any determination made by the chancellor beyond the question of will or no will regarding the 1982 will, and will or no will regarding the 1980 will were beyond the scope of the pleadings and not permissible. As a practical matter, the determination that the inter vivos transfer of the certificate of deposit was void is of no effect since we have held that the 1980 will, with appellant as sole beneficiary, was valid. However, Billy Joe Trotter, Jr., must resort to an action against the estate if he intends to recover the dining room suite.
We, therefore, reverse the finding of the chancellor that the 1980 will was invalid and we reverse his finding of the inter vivos gift to Billy Joe Trotter, Jr. We find affirmatively that the 1980 will is the valid last will and testament of Louise Trotter Rooney.
REVERSED AND RENDERED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, PRATHER, ROBERTSON and ANDERSON, JJ., concur.
DAN M. LEE, J., concurs in result only.