556 So.2d 1045 (1990)
Joe Ann WILLIAMS, Administratrix of Estate of Roosevelt Adams, Deceased
v.
Frances MASON.
No. 07-58847.
Supreme Court of Mississippi.
February 7, 1990.
*1047 Tyree Irving, Walls & Irving, Greenwood, for appellant.
Kinney M. Swain, Greenville, for appellee.
Before HAWKINS, P.J., and ROBERTSON and PITTMAN, JJ.
ROBERTSON, Justice, for the Court:

I.
In 1962, Roosevelt Adams promised Frances Mason that, if she would live in his home and do his bidding, at his death she would take all of his property. Not a word of this was in writing. In fact, Mason moved into Adams' home and did for well over twenty years as she had agreed. Adams died intestate, and our question is whether, by reason of the agreement or otherwise, Mason holds any enforceable rights against his estate, the principal asset of which is some twenty acres of farm land in Washington County, all of which were acquired during the period of the parties cohabitation.
The Chancery Court held the agreement enforceable and ordered Adams' administratrix to deliver the property to Mason. In this the Court erred and we must reverse. Because Mason holds rights under other law, we remand for further proceedings.

II.
Roosevelt Adams was born on November 24, 1912. He married Della Adams and of that union a son, Roosevelt Adams, Jr., was born in December, 1931. Della Adams is long since deceased.
Adams married Audrey Mae Adams in 1942, but of that union no children were born. At some time thereafter, Adams and Audrey Mae separated and she has lived in Chicago since that time, although the parties have never obtained a divorce.
In 1949, Roosevelt, Jr., then eighteen years of age, left home and never saw his father again.
Frances Mason was born on September 19, 1940. In 1962, under the circumstances described above, Mason moved onto the Adams farm in Washington County, Mississippi, and into Adams' home. At the time Mason was twenty-one years old, while Adams was fifty-two. Mason continues to live on "the place".
Roosevelt Adams never promised to marry Frances Mason, a fact not explained, nor is any reason given why Adams failed to obtain a divorce from his estranged wife in Chicago.
The record is less than clear how much land Adams owned in 1962. It does appear that in 1966 Adams acquired certain interests in the west half of the southwest quarter of the northeast quarter of Section 19, Township 18, North, Range 6 West, Washington County, Mississippi, from Jasper Adams. Also, in 1966, Audrey Mae Adams transferred all of her rights in Adams' property to him.
On February 4, 1986, Roosevelt Adams died. On September 5, 1986, Joe Ann Williams[1] filed in the Chancery Court of Washington County, Mississippi, a petition for letters of administration upon the Estate of Roosevelt Adams, deceased. Williams alleged that Adams had died intestate and was survived by Roosevelt Adams, Jr. and Audrey Mae Adams as his sole heirs-at-law. Letters of administration were granted to Williams and notice to creditors was published first on September 11, 1986.
On November 20, 1986, Frances Mason answered the petition and by counter-claim set up her agreement with Adams and claimed his estate. The case went to trial as a contest between Mason and Adams' heirs-at-law. On October 7, 1987, the *1048 Court made the following express findings of fact:
That Frances Mason and Roosevelt Adams entered into an oral agreement wherein Frances Mason agreed to take care of Roosevelt Adams until his death, and in consideration for said Agreement, Roosevelt Adams would leave Frances Mason all of his property at his death, and thereafter, Frances Mason lived with him until his death and that during his lifetime, Roosevelt Adams never made a will, and no proof was shown to the contrary in this proceeding and no specific mention of the word "will" was made.
That on March 30, 1981, Roosevelt Adams conveyed the store and residence house where the parties, Roosevelt Adams and Frances Mason, lived to Roosevelt Adams and Frances Mason, as joint tenants with survivorship rights and not as tenants in common, and, prior to his death, established a bank account with the Bank of Hollandale in Greenville, Mississippi, as joint tenants with the right of survivorship corroborating that it was Roosevelt Adams' intention to place all property in Frances Mason at his death.
That a clear, definite and certain agreement existed between Roosevelt Adams and Frances Mason that at his death, Frances Mason would have all of his property. The services that Frances Mason provided Roosevelt Adams during his life, were unique, necessary services and, as a result of that agreement, Frances Mason made substantial changes in her lifestyle.
That Frances Mason rendered good and valuable services in connection with the agreement between Frances Mason and Roosevelt Adams, and that she cannot be restored to her original status, that Roosevelt Adams accepted these services and these services were rendered to Roosevelt Adams in good faith; that Frances Mason lost over 25 years of her life while providing for Roosevelt Adams and that Frances Mason was the only person present and able to take care of Roosevelt Adams, and therefore, that Frances Mason executed performance of the agreement between Frances Mason and Roosevelt Adams as to Roosevelt Adams' estate and that said contract is enforceable as to Roosevelt Adams' estate.
Following these findings, the Court ordered Joe Ann Williams, Administratrix, to deliver all property of the Estate of Roosevelt Adams to Frances Mason, less and except all properly registered and probated claims and expenses of administration, fees and costs.
From this judgment, the heirs-at-law appeal.

III.
A contract to devise or bequeath property by will is enforceable in this state. Trotter v. Trotter, 490 So.2d 827, 830 (Miss. 1986); Estate of McKellar v. Brown, 404 So.2d 550, 552 (Miss. 1981). As with other facilities our law affords persons for achieving their wishes, the contract to devise is attended by certain formalities which, if not observed, may result in the contract being legally unenforceable. One of the most important of these formalities is that the contract must be in writing, a function of our statute of frauds. Miss. Code Ann. § 15-3-1 (1972); Estate of McKellar v. Brown, 404 So.2d at 553; Collins' Estate v. Dunn, 233 Miss. 636, 644-45, 103 So.2d 425, 430 (1958); Stephens v. Duckworth, 188 Miss. 626, 634, 196 So. 219, 221 (1940). Though a party may satisfy the court of the existence of an unwritten agreement to devise, the statute precludes specific performance as a remedy our courts may decree. Liddell v. Jones, 482 So.2d 1131, 1132 (Miss. 1986); Collins' Estate v. Dunn, 233 Miss. at 644-45, 103 So.2d at 430; Ellis v. Berry, 145 Miss. 652, 110 So. 211, 213 (1926). This is so even though the promisee has done all he was expected to do under the agreement. Wells v. Brooks, 199 Miss. 327, 332, 24 So.2d 533, 534 (1946). Holmes put the point well a century ago in Bourke v. Callahan, 160 Mass. 195, 35 N.E. 460 (1893):
We are aware that by our construction of Pub.Sts. C. 141, § 1, the statute of frauds may be made an instrument of *1049 fraud. But this is always true, whenever the law prescribes a form for an obligation. The very meaning of such a requirement is that a man relies at his peril on what purports to be such an obligation without that form.
Bourke, 160 Mass. at 197, 35 N.E. at 461.
The oft discussed case of Johnston v. Tomme, 199 Miss. 337, 24 So.2d 730 (1946) is not to the contrary, for in Johnston the testator had executed a will conforming to his oral agreement and the only question was whether he had the power to revoke that will. In this circumstance, the will was a writing signed by the party to be charged, thus satisfying the statute's evidentiary policy.
When these principles are applied to the facts before us, but one result may follow. Mason's agreement with Adams is formally deficient and is without power to confer upon her an enforceable right to Adams' property. The Chancery Court erred when it held to the contrary. We reverse.

IV.

A.
Notwithstanding these well settled principles, experience has taught that gross unfairness may result where one acts in good faith and lives up to an oral agreement to provide services for another under circumstances such as today's. Our law has seen in such situations a potential for unjust enrichment, if not fraud. See Estate of McKellar v. Brown, 404 So.2d at 553. In recognition of these practical realities, the positive law of this state directs that a person, who provides services to another in good faith and in consequence of an oral agreement to devise property in exchange for the services, is not without enforceable rights. Trotter v. Trotter, 490 So.2d at 830; Voss v. Stewart, 420 So.2d 761, 764-65 (Miss. 1982). These rights arise not out of the agreement but the conduct of the parties. Johnston v. Tomme, 199 Miss. at 345; 24 So.2d at 731. The promisee activates the rights the law affords by performing the services in good faith reliance on the promise. Voss v. Stewart, 420 So.2d at 764-65.
When the parties have so acted with respect one to the other, that is, when one has provided services for the other in reasonable reliance upon a promise to give consideration therefor, our cases are legion that, upon the death of the promisor, the promisee may recover of and from the estate on a quantum meruit basis. Trotter v. Trotter, 490 So.2d at 830-31; Liddell v. Jones, 482 So.2d at 1132; Collins' Estate v. Dunn, 233 Miss. at 645, 103 So.2d at 430; In re Estate of Whittington, 217 Miss. 457, 463, 64 So.2d 580, 582 (1953); Wells v. Brooks, 199 Miss. at 335-36, 24 So.2d at 536; Stephens v. Duckworth, 188 Miss. at 634, 196 So. at 221; Hickman v. Slough, 187 Miss. 525, 530, 193 So. 443, 444-45 (1940); First National Bank v. Owen, 177 Miss. 339, 347, 171 So. 4, 6 (1936); Ellis v. Berry, 145 Miss. 652, 110 So. 211, 215 (1926). In such cases the amount of recovery is limited to the monetary equivalent of the reasonable value of the services rendered to the decedent for which payment has not been received. Liddell v. Jones, 482 So.2d at 1133; Collins' Estate v. Dunn, 233 Miss. at 644-45, 103 So.2d at 430. Said sum becomes a charge against the assets of the estate.
Our law recognizes an additional basis upon which  assuming proper proof  a person such as Mason may recover. Where parties live together without benefit of marriage and where, through their joint efforts, accumulate real property or personal property, or both, a party having no legal title nevertheless acquires rights to an equitable share enforceable at law. Pickens v. Pickens, 490 So.2d 872, 875-76 (Miss. 1986); Taylor v. Taylor, 317 So.2d 422, 423 (Miss. 1975); Chrismond v. Chrismond, 211 Miss. 746, 52 So.2d 624, 629 (1951).

B.
The Chancery Court held itself precluded from considering anything beyond Mason's claim for specific performance of the oral contract to devise. The Court expressly *1050 declined to consider a quantum meruit remedy for Mason. The Court recited that it took this view because Mason had not presented her claim for services in the form of a probated claim. This wooden reading of our probate procedure ignores the substantive realities of Mason's procedural course and is plainly erroneous. See Rule 28(a)(3), Miss.Sup.Ct. Rules.
On November 20, 1986, well within the ninety day period allowed for creditors to present claims, see Miss. Code Ann. § 91-7-151 (Supp. 1989), Mason filed her counterclaim. That counterclaim is given by Mason under oath and sets forth in full and in detail the basis of Mason's claims. True, the counterclaim was not in the magic form we once thought required by statute. Miss. Code Ann. § 91-7-149 (1972). No matter. We have long accepted that substantial compliance with our statute on the probate of claims is all that is required. Estate of Wilson v. National Bank of Commerce, 364 So.2d 1117, 1121 (Miss. 1978); Ethridge v. Estate of Paul, 196 So.2d 530, 532 (Miss. 1967); Central Optical Merchandising Co. v. Estate of Lowe, 249 Miss. 61, 72, 160 So.2d 673, 678 (1964).
The principle is elaborated in Central Optical where the Court recognized that
presentation of a claim against an estate is in many respects similar to the filing of a suit against a defendant.
249 Miss. at 72, 160 So.2d at 678. The Court there suggested adequate a claim which
gave notice that it existed against the estate, for payment of which the creditor looked to the estate .. . and gave such information concerning its nature and amount as would enable the representative of the estate to act intelligently either in providing for its payment or in rejecting it, ... .
249 Miss. at 72, 160 So.2d at 678. Central Optical continued that the claim would be held procedurally adequate where it has been presented "in substantial compliance with the foregoing requirements." 249 Miss. at 72, 160 So.2d at 678. Estate of Wilson is to like effect. 364 So.2d at 1120-21; see also Weems, Wills and Administrations of Estates in Mississippi, 48 (1988).
In analogous cases we have provided similarly sensible construction of other once thought rigorous formalities of estate matters. See, e.g., Perkins v. Thompson, 551 So.2d 204 (Miss. 1989) (eschewing the formality of requiring filing a formal adversarial claim of heirship because the party asserting the claim was the administratrix herself and in her petition for administration had claimed to be the sole and only heir at law); Leflore By Primer v. Coleman, 521 So.2d 863 (Miss. 1988) (illegitimate children of decedent not barred for failure to give notice within ninety days of publication of notice to creditors where petition specifically named the same children as the natural children of the deceased).
With the limited exception of the label on her pleading, Mason did all that our probate claim statute requires. She set forth the nature of her claim and summarized its factual basis. She complied with the important verification requirement of Section 91-7-149 and filed her counterclaim on the seventieth day following first publication of notice to creditors  well within the ninety day limitations period of Section 91-7-151. We are confident that, had Mason's counterclaim been labeled probate claim and otherwise been verbatim identical, no one would question that Mason had done all that was expected of her under our statutes respecting the registry and probate of claims. See Central Optical Merchandising Co. v. Estate of Lowe, 249 Miss. 61, 72, 160 So.2d 673, 678 (1964); Estate of Wilson v. National Bank of Commerce, 364 So.2d 1117, 1121 (Miss. 1978). We hold Mason's pleadings adequate that she may pursue the remedies of quantum meruit or equitable division.[2]

*1051 C.
The Chancery Court held the contract enforceable but granted a remedy of specific performance. We hold, instead, that Mason's remedies, if any, were quantum meruit recovery or equitable division. The case thus approaches the principle that, where the court below has reached the right result for the wrong reason, we will not intervene on appeal. Accredited Surety & Casualty Co., Inc. v. Atkinson, 535 So.2d 56 (Miss. 1988); Morco Industries, Inc. v. City of Long Beach, Mississippi, 530 So.2d 141 (Miss. 1988); Board of Trustees of Monroe County Board of Education v. Rye, 521 So.2d 900 (Miss. 1988). The parties have litigated, and the Chancery Court has decided, matters requisite to the remedies legally available to Mason, and there is no reason those matters ought be retried.
The course of proceedings below, coupled with the findings of fact made by the Chancery Court, are such that we hold that Frances Mason has established her agreement with Adams and that she has indeed performed valuable services in good faith and in reliance on Adams' promise. Mason is entitled to recover of and from Adams' estate the reasonable value of the services so rendered.
In so holding, we well realize that we hold enforceable rights predicated upon the conduct of the parties but unattended by any writing. Although neither the statute of frauds nor the statute of wills per se preclude quantum meruit recovery in such circumstances, we are not unaware that the policy considerations supporting the existence and enforcement of those statutes may be present nevertheless. Because the decedent is not available to provide his version of the matter, courts must view with a touch of skepticism claims for services rendered asserted only at death. We have in the past suggested that the party alleging such an agreement must prove its existence by something more than the ordinary preponderance of the evidence. In Kalavros v. Deposit Guaranty Bank & Trust Co., 248 Miss. 107, 114, 158 So.2d 740, 743 (1963), we said such an agreement must be proved by "clear, definite and certain evidence." See also Trotter v. Trotter, 490 So.2d at 830; Voss v. Stewart, 420 So.2d at 764. In Wells v. Brooks, 199 Miss. 327, 335, 24 So.2d 533, 536 (1946), we employed a more familiar criteria: "clear and convincing evidence." In First National Bank v. Owen, 177 Miss. 339, 344, 171 So. 4, 5 (1936), we said the proof must be "clear and reasonably positive." The Chancery Court no doubt had these views in mind when it
found from the evidence by clear and convincing proof to this Court that a clear, definite, certain and adequate agreement existed, that Mr. Adams intended having all of his property transferred to Frances Mason in consideration of the services which she was performing.
We find that the Chancery Court was mindful of the heightened proof requirements as it proceeded to evaluate the evidence before it.
Our scope of review of findings on the matter of whether an agreement for services exists is subject to the familiar manifest error/substantial evidence principles. Matter of Estate of Ford, 552 So.2d 1065, 1067-68 (Miss. 1989); Lowrey v. Will of Smith, 543 So.2d 1155, 1163 (Miss. 1989); Walters v. Patterson, 531 So.2d 581, 583-84 (Miss. 1988); Blissard v. White, 515 So.2d 1196, 1199-1200 (Miss. 1987). In this view we have affirmed findings that such an agreement exists, First National Bank v. Owen, 177 Miss. at 344-47, 171 So. at 5-6, and, as well, findings that there was no such agreement for services, Liddell v. Jones, 482 So.2d at 1133-34; but see Hickman v. Slough, 187 Miss. 525, 528-32, 193 So. 443, 444-46 (1940) (reversing a chancery court's finding of no contract and holding that the evidence did establish a contract).
On these familiar principles, we decline to disturb the Chancery Court's findings of fact. We remand for such proceedings, including amendment of pleadings, as may be necessary and appropriate that Frances Mason may establish the amount in which her claim against the Estate of Roosevelt *1052 Adams must be allowed, and/or assert a claim for equitable division of jointly acquired assets.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
NOTES
[1] Joe Ann Williams is the niece of Roosevelt Adams and appears to have no personal interest in his estate.
[2] Stephens v. Duckworth, 188 Miss. 626, 635, 196 So. 219, 221 (1940) suggests that a quantum meruit claim is "a liability in the strictest sense ... and not a claim within the meaning of our statutes upon probated claims." We regard it the better view, however, that such claims be probated in substantial compliance with the statutory procedure therefor.