# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-CA-01166-SCT

*IN THE MATTER OF THE ESTATE OF EARL EDSEL STEWART, DECEASED; THE LAW FIRM OF LOGAN & BISE*

*v.*

*R. L. STEWART, EXECUTOR*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/28/97 |
| TRIAL JUDGE: | HON. SHANNON S. CLARK |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | CARTER O. BISE |
| | FLOYD J. LOGAN |
| ATTORNEY FOR APPELLEE: | JAMES M. HALL |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 2/18/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/12/99 |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. The law firm of Logan & Bise perfected this appeal from the trial court's denial of their proof of claim filed against the estate of Earl Edsel Stewart. Logan & Bise assign the following issues for appellate review:

**I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN HOLDING THAT THE PROVISIONS OF MISS. CODE ANN. § 15-1-49 (1972) BARRED RECOVERY OF THOSE PORTIONS OF THE CLAIM FILED FOR PROBATE BY LOGAN & BISE WHICH REPRESENTED CHARGES FOR SERVICES AND EXPENSES INCURRED MORE THAN THREE YEARS PRIOR TO THE FILING OF THE PROOF OF CLAIM.**

**II. THE TRIAL COURT ERRED AS A MATTER OF LAW IN HOLDING THAT APPELLANTS WERE NOT ENTITLED TO RECOVER FOR SERVICES PERFORMED WITHOUT A WRITTEN CONTRACT.**

### STATEMENT OF THE FACTS

¶2. Sometime in 1987, Edsel Stewart ("Stewart") approached attorney Floyd J. Logan ("Logan") seeking legal representation regarding a dispute with his adjoining property owner, W.C. Fore ("Fore"). Stewart believed that a strip mine being operated on Fore's property was damaging his land and violated certain regulations promulgated by the Department of Environmental Quality ("DEQ"). According to Logan, Stewart balked at the standard contingency fee contract. As a result, and again according to Logan, the parties settled on "a cost plus a reduced hourly rate and a reduced contingency fee" arrangement. However, there was never a written agreement reached concerning the contingency fee, and further, no written contract has ever been found by either party.

¶3. Stewart died of cancer in September of 1995. Prior to his death, the DEQ issued a ruling adverse to Stewart and a lawsuit had been filed on his behalf by the law firm of Logan & Bise, but neither the appeal of the DEQ ruling nor the lawsuit had been resolved at the time of Stewart's death. In October of 1995, Stewart's daughter, Glenda Bach ("Glenda") directed Carter Bise ("Bise"), of Logan & Bise[1], to dismiss the DEQ appeal. Subsequently, the Estate sold Stewart's property to Fore for the sum of $465,000. The terms of the sale were negotiated by the executor of the estate, R.L. Stewart ("R.L."), without the assistance of the law firm of Logan & Bise. Bise testified that he had obtained the services of an appraiser, John Holliday, to assist in the sale of the property.

¶4. After her father's death, Glenda and her husband, Gene Bach ("Gene"), met with Bise to discuss the status of the firm's representation of Stewart. Glenda and Gene testified that Bise told them that Stewart did not owe Logan & Bise any money. Likewise, R.L. testified that in the months before his death Stewart never mentioned being indebted to Logan & Bise. R.L. further testified that Bise told him that "Edsel didn't owe him anything." Bise testified that he told R.L., Gene, and Glenda that **they** did not owe him anything. He stated that he was not referring to the fee owed by Stewart, but only to any fee that might be owed by R.L. or Gene and Glenda.

¶5. It is the position of Logan & Bise that the representation of Stewart continued from 1987 to late 1995, when they were directed to dismiss the DEQ appeal and the property in question was sold to Fore. The evidence showed that over the course of 8 years, Logan & Bise sent two bills for legal services to Stewart. The first bill was sent June 8, 1988, and totaled $737.05, which represented 9.25 hours of work at $75 per hour and $43.30 in out-of-pocket expenses. Stewart promptly paid this bill by check on June 10, 1988. The second bill was sent August 9, 1988, and was for $817.26. The amount of time expended was 10.50 hours at $75 per hour and $29.76 in expenses for a total of $817.26. Again, Stewart paid the bill by check dated August 16, 1988. These two bills were the only statements ever sent to Stewart by Logan or Logan and Bise.

¶6. Logan & Bise filed a proof of claim against the estate. Special Chancellor Shannon Clark presided over the trial of this cause on February 13, 1997. The chancellor disallowed the law firm's proof of claim, with the exception of $3,606.11 in out-of-pocket expenses incurred within the three years prior to the filing of the claim. Chancellor Clark found that the three (3) year statute of limitations found in Miss. Code Ann. § 15-1-29 (1972)[2] applied to the claims of Logan & Bise. Although he found that the legal work had been performed for the benefit of Stewart, he ruled that there was never a clear understanding between the lawyers and the client as to the fee and any payments, and disallowed any recovery for legal services. Pursuant to M.R.C.P. 59, Logan & Bise filed a petition for reconsideration that was denied by the chancellor on September 10, 1997. The law firm perfected an appeal to this Court.

## DISCUSSION OF THE LAW

¶7. Before addressing the merits of the case at bar, it is necessary to discuss several points raised by Stewart in his brief. He asserts that the claims of Logan & Bise are barred by the ninety (90) day notice to creditors statute found in Miss. Code Ann.§ 91-7-151 (1972). The record reveals that this issue was decided adversely to Stewart by another chancellor in a different proceeding. Stewart apparently never appealed the decision of the chancellor. Chancellor Clark, during the trial of the case *sub judice*, found that the issue had already been decided and refused to consider it. Regardless, once a party timely files an appeal, any other party may file a cross-appeal within fourteen (14) days. M.R.A.P. 4(c). Since Stewart has not filed a cross-appeal in this Court, his argument is not properly before this Court and we decline to consider it now.

¶8. Additionally, Stewart asserts that the petition for reconsideration filed by Logan & Bise was neither properly designated as a M.R.C.P. 59 motion nor timely filed. Logan & Bise filed a petition for reconsideration five (5) days after the entry of judgment in the lower court. A petition for reconsideration is treated as a motion to amend judgment pursuant to M.R.C.P. 59(e) and must be filed within ten (10) days. *See Allen v. Mayer*, 587 So.2d 255, 261 (Miss. 1991). As such, this appeal has been timely filed and is properly before this Court.

> **I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN HOLDING THAT THE PROVISIONS OF MISS. CODE ANN. § 15-1-49 (1972) BARRED RECOVERY OF THOSE PORTIONS OF THE CLAIM FILED FOR PROBATE BY LOGAN & BISE WHICH REPRESENTED CHARGES FOR SERVICES AND EXPENSES INCURRED MORE THAN THREE YEARS PRIOR TO THE FILING OF THE PROOF OF CLAIM.**

¶9. Logan & Bise concede that the three (3) year statute of limitations found in § 15-1-49 governs their claim filed against the Estate of Stewart. They contend, however, that the cause of action accrued when the Estate settled the lawsuit with Fore by selling the property for $465,000. As such, they submit that the statute of limitations began to run from that date. It is true that § 15-1-49, rather than § 15-1-29, applies to contracts for professional services. *See Michael S. Fawer v. Evans*, 627 So.2d 829, 833 (Miss. 1993). We must determine whether the chancellor was manifestly erroneous in finding that portions of the claim were barred by the three (3) year statute of limitations.

¶10. On hearing the petition for reconsideration the chancellor found the following:

> Now, I recognize that the statute of limitations may not apply if you have an understanding with your client that you will not bill him until the conclusion of the matter, then your claim doesn't come due until the conclusion of the matter. But the evidence here indicates that that was not the understanding, but rather that a bill was made eight years prior to that and was paid and no additional bills were sent. And for that reason I applied the statute of three-year limitations to it because I didn't find from the evidence that there was a clear understanding that he would not be billed until the conclusion of the matters for which he was being charged, the lawsuit in other words.

¶11. Logan's representation of Stewart began on November 25, 1987. Stewart was billed, and paid, for services rendered up to and including August 2, 1988. Logan performed work on behalf of Stewart on a fairly consistent basis until March 10, 1989. From that date until May 21, 1993, Logan performed no recorded services on behalf of Stewart. It is unreasonable to conclude that Logan's representation of

Stewart was continuous over this fifty (50) plus month period when no legal services were rendered. Further, Logan's time statement from May 21, 1993, reflects that he met with Stewart concerning a "new lawsuit." The record supports the finding that the chancellor was not manifestly erroneous in holding that a claim will only be recognized from May 21, 1993, which was the start of a "new lawsuit." The prior representation ended March 10, 1989, and the three (3) years statute of limitations precludes a claim for any services or expenses for that period of representation.

## II. THE TRIAL COURT ERRED AS A MATTER OF LAW IN HOLDING THAT APPELLANTS WERE NOT ENTITLED TO RECOVER FOR SERVICES PERFORMED WITHOUT A WRITTEN CONTRACT.

¶12. Logan & Bise submit that attorney's fees are recoverable absent a written contract, and that they had a implied contract with Stewart on which to base an award of attorney's fees. The Estate argues that the law firm failed to carry its burden of establishing the rate and manner of pay. Additionally, the Estate alleges that the doctrine of laches precludes any recovery by Logan & Bise.

¶13. With respect to services provided Stewart by Logan & Bise, the chancellor made the following findings.

> Based on the testimony before the Court, I really don't have any serious doubt that the work for which this claim is filed was done. And the Court finds that the work for which this claim is filed was done. The real serious problem that I have with this case is that there appears to be no clear understanding between the lawyers and their client, irrespective of what happened after his death, nothing in this testimony indicates to me that there was clear understanding between the lawyer and the client as to how the fee would be paid. It's gone back and forth between so-called contingency fee agreement and an hourly charge, now a quantum meruit, and the letter of Exhibit 11, May the 21st I think it is, indicates that there was not ever any clear understanding as to how payment was to be made for these services. Had it been a contingency fee, that would have been one thing. Had it been an hourly charge, that would have been something else. But there's not even any understanding as to the amount of the hourly charge. There were some bills back in 1988 for $75 an hour.

> Based on that, the Court is going to sustain the objection to the claim for hourly charges by the attorneys because of the misunderstanding or lack of an understanding as to what fee and how the fee would be charged, but the court is going to allow that part of the claim that is a reimbursement for out-of-pocket expenses by the attorneys.

The chancellor further explained his reasoning at the hearing on the petition for reconsideration.

> . . . In addition to that, there is the exhibit which contains, or which is the letter which contains the phrase that, the only discussions that were had with Mr. Stewart were for quote, "limited contingency fee," as I recall it said and quote, "limited hourly charges." Nothing was brought forward to Mr. Stewart during his lifetime to in any way define what that meant. And now, after his death and on the claim the Court has essentially has to write a new contract or a new agreement between the parties, the attorneys and the client, to say it really was not a limited contingency fee, it was really not a limited hourly charge, but it was strictly a quantum meruit. And I just don't believe that under the law the Court can make that determination, particularly when this originated some eight years before this claim was ever filed.

The irony of the whole thing is that had the attorneys done the work without any understanding at all, I think your position would be stronger; it would be under the law with no understanding at all a quantum meruit. But where there was an understanding of some kind of a limited contingency fee or limited hourly charge, that's sufficiently vague in my opinion to be unenforceable by this Court, particularly when nothing was done for a period of eight years during the man's life that have him an opportunity, that would be giving him an opportunity to agree or disagree with the method the law firm was charging him. For it now to come up after his death, I think makes an unenforceable claim.

¶14. Recovery in quantum meruit is a remedy based in contract that is premised on "either [an] express or `implied' contract." *Estate of Johnson v. Adkins*, 513 So.2d 922, 926 (Miss. 1987). The findings by the chancellor, *supra*, and the record support the conclusion that Logan & Bise rendered legal services at the request of Stewart with the expectation of payment. In such cases, the law implies a contract to pay for said services. *See Kalavros v. Deposit Guar. Bank & Trust Co.*, 248 Miss. 107, 118, 158 So.2d 740, 744 (1963); *Wiltz v. Huff*, 264 So.2d 808, 811 (Miss. 1972); *Estate of Van Ryan v. McMurtray*, 505 So.2d 1015, 1018 (Miss. 1987). Where the recovery is based in quantum meruit, the amount of recovery is "limited to the monetary equivalent of the reasonable value of the services rendered to the decedent" for which payment has not been tendered. *Williams v. Mason*, 556 So.2d 1045, 1049 (Miss. 1990)(citing *Liddell v. Jones*, 482 So.2d 1131, 1133 (Miss. 1986); *Collins' Estate v. Dunn*, 233 Miss. 636, 644-45, 103 So.2d 425, 430 (1958)).

¶15. Logan & Bise originally calculated the reasonable value of the services provided to Stewart at $15,756.17. However, just before trial began, Bise moved to amend that amount to $14,731.17 because the law firm found that a couple of bills had been paid by Stewart prior to his death. Logan initially testified that billing records of the firm's work done on behalf of Stewart was entered in the computer contemporaneously. Later, he stated that some of the more recent entries had been reconstructed. Bise testified that, in May of 1996, he had gone back through the firm's correspondence and pleading files in an effort to reconstruct the time that was spent on the Stewart matter. Bise made no representation that the reconstruction process was limited to the last several years.

¶16. The two bills sent to Stewart and the billing worksheet introduced by Logan & Bise reflect some inconsistent entries for the same time period. For instance, in the bill sent to Stewart, Logan billed Stewart .75 of an hour on June 7, 1988, for "review of photos and deeds; letter to Gilliland." The billing worksheet for the same date shows that Logan spent 3 hours on research, reviewing photographs and a letter to Gilliland. These inconsistencies lead us to conclude that the billing worksheet was reconstructed which resulted, at least in some instances, in the client being over billed. Further, despite Logan's concession that in 1988 he was charging Stewart $75 an hour, the billing worksheet reflects an hourly rate of $100 for the same time period.

¶17. Since the three (3) year statute of limitations cuts off the claim made by the law firm for services that ended on March 10, 1989, we are only concerned with services provided after May 21, 1993. This date marks the point at which Logan & Bise commenced a "new lawsuit" on Stewart's behalf. This representation was not concluded until Stewart's family directed the law firm to cease with their efforts on behalf of Stewart. Within this time period, the records of Logan & Bise reflect that 93.5 hours were spent working on behalf of Stewart.

¶18. Although it was established that $100 an hour was a reasonable rate in the coastal area during this time

period, we believe $75 an hour is appropriate because that was agreed upon by the parties in 1987 and 1988. This rate is the only history of any understanding concerning fees between the parties. Likewise, there was testimony of discussion between the attorneys and Stewart of a "limited contingency and a reduced hourly rate." While $100 may be the customary rate along the coast, there is no indication that the decedent was willing to pay it. Additionally, we find that the estate should have the benefit of the doubt given the circumstances of this case.

¶19. Due to the inconsistencies and discrepancies noted *supra*, we find a 10% reduction in the number of billable hours attributable to Stewart to be appropriate. The fact that the billing worksheet seems, in whole or in part, to be a reconstruction leads to the conclusion that its accuracy may be unreliable. There are several entries where the hours spent are disproportionate to work completed. An example is 2.5 hours billed for "receipt and review of letter and answer of Fore." It is unreasonable to conclude that an experienced lawyer spent 2 and ½ hours reading an answer filed by an opposing party.

¶20. The amount recoverable by Logan & Bise for services rendered on behalf of Stewart billed as 93.5 hours is therefore reduced to 83 hours. Logan & Bise are entitled to recover in quantum meruit the sum of $6,225.00, plus the expenses previously found recoverable by the chancellor in the amount of $3,606.11. This amount is to be paid by Stewart's estate. The Estate is not required to pay interest on this recovery.

## CONCLUSION

¶21. The chancellor was correct in concluding that the three (3) year statute of limitations applied to Logan & Bise's proof of claim filed against Stewart's estate with regard to services and expenses concluded in 1989. Yet, it was error to deny the quantum meruit claim and the "new lawsuit" from March 21, 1993, as it is clear that Logan & Bise did render services at the request of Stewart with the expectation of payment. The previous dealings between the parties dictate that $75 an hour be used as the rate of payment. Finally, equity and the disparities found in Stewart's bill and the billing worksheet convince us that a reduction in the amount of billable hours allowed is appropriate here. The decision of the lower court is reversed and rendered.

¶22. **REVERSED AND RENDERED.**

**PRATHER, C.J., SULLIVAN, P.J., AND SMITH, J., CONCUR. McRAE, J., CONCURS IN PART. PITTMAN, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION. BANKS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY McRAE AND ROBERTS, J.J. MILLS, J., NOT PARTICIPATING.**

### PITTMAN, PRESIDING JUSTICE, DISSENTING:

¶23. Because I disagree with the conclusion reached by the majority, I respectfully dissent. First, the evidence presented is insufficient to establish a contractual relationship. The majority alludes to this fact in its opinion where it states, "there was never a written agreement reached concerning the contingency fee, and further, no written contract has ever been found by either party." The facts in this case provide a vivid demonstration of what Rule 1.5(b) of the Mississippi Rules of Professional Conduct attempted to prevent.

Rule 1.5(b) states:

> When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation.

¶24. Secondly, even if a contractual relationship could be proven with the evidence presented here, the evidence is insufficient to establish the money owed in this case due to the lack of written records. For these reasons I would reverse and render the Chancellor's ruling and award of money damages in this case.

**BANKS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART**:

¶25. The majority chooses to reduce the hourly rate from $100 to $75 based on an "agreement" when we are operating in the absence of an agreement or quantum meruit. Because I am not comfortable with the majority's decision, I respectfully dissent.

¶26. In 1988-89, the hourly rate for services rendered by Logan & Bise was $75. The majority holds to $75 for services performed in 1993 and since because that is what the firm charged Stewart in 1988. Because there is no agreement for a rate in 1993, the majority concludes $75 is the only history of any understanding on fees. However, the hourly rate in 1993 was not $75 and I do not agree that services rendered in 1993 and since should be compensated at 1988-89 rates. In my view, there exists no rational basis for reducing the fee as a reasonable rate based on "agreement" when there is no agreement. Moreover, if the rate is determined based on quantum meruit, the amount should reflect such, and the majority should not base it on a nonexistent agreement. We define quantum meruit as the "reasonable value of the materials or services rendered." *Estate of Johnson v. Adkins*, 513 So. 2d 922, 925 (Miss. 1987). This is without regard to the terms of any failed contract. *See Moore v. Tyson*, 613 So. 2d 817, 828 (Miss. 1992) (remanding for award of fee based on what was "reasonable for the work performed" after voiding a contingent fee contract due to overreaching.); *See also Smith v. Bliss*, 112 P.2d 30, 33-34 (Cal. Ct. App. 1941) (holding that reasonable value of the services rather than terms of a contract, enforcement of which was barred by statute of frauds, governed measure of recovery under quantum meruit.)

¶27. While in all other respect I agree with the majority, I believe the hourly rate should be restored to $100.

**McRAE AND ROBERTS, JJ., JOIN THIS OPINION.**

1. Floyd Logan and Carter Bise established the law firm of Logan & Bise on May 1st, 1993. Bise first began working on the Stewart file in August of 1993.

2. The chancellor found Miss. Code Ann. § 15-1-29 (1972) applies to a claim for legal fees and expenses. However, the parties agree Miss. Code Ann. § 15-1-49 (1972) is the appropriate statute of limitations and will be addressed as such on review.